**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jarrett E. McGILL, Defendant–Appellant.**

**No. 93–1868.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 8, 1993.

Decided Aug. 15, 1994.

Andrew B. Baker, Jr., Asst. U.S. Atty., Dyer, IN (argued), for plaintiff-appellee.

James H. Milstone (argued), Thorne, Grodnik & Ransel, Elkhart, IN, for defendant-appellant.

* Hon. John T. Curtin, of the Western District of New York, sitting by designation.

Before COFFEY and EASTERBROOK, Circuit Judges, and CURTIN, District Judge.*

COFFEY, Circuit Judge.

The defendant, Jarrett E. McGill, was convicted by a jury of two counts of bank robbery (the robberies occurred on August 10, 1992 and August 21, 1992) in violation of 18 U.S.C. § 2113(a). Following the conviction, the court sentenced the defendant to two seventy-eight-month terms of imprisonment concurrent and concurrent with each other to be followed by concurrent three-year terms of supervised release. The court also ordered the defendant to pay $3,090 in restitution to the First Federal Savings Bank of Indiana. The defendant appeals both his conviction and the trial court's application of the Sentencing Guidelines. We affirm.

## I. BACKGROUND

On August 10, 1992, McGill entered the First Federal Savings Bank of Indiana in Gary, Indiana. McGill handed a teller, Phyllis Simpson, an envelope with a note stating "Act like this is a check for $50,000. Place the money in the envelope. Don't alert any guards or the teller next to you or you'll be shot." McGill kept his hand in his pocket indicating he was armed but the teller did not view a weapon. The teller followed the directions, removed $1,070 from her drawer, placed it in the envelope and handed it to McGill who left the bank.

Eleven days later, on August 21, 1992, Simpson again observed McGill enter the bank but this time the defendant went to the window of teller Kristi Kallas and handed her a note telling her not to alert the guards but to act as though the note was a check for $5,000 and that she would not be hurt if she put all the money from her drawer in the envelope. The teller removed $2,160 from her drawer, placed it in the envelope and turned it over to McGill who exited the bank.

Two weeks thereafter on September 4, 1992, McGill entered the bank a third time but when he arrived both tellers Simpson and Kallas recognized him. Simpson set off

the hold up alarm and Roger Smith, a Gary Police officer, responded and arrested McGill. McGill did not have a "holdup" note in his possession at the time of arrest, but did have a "scribbled" note on a "crunched up" piece of paper having nothing to do with a bank robbery.

After his arrest, two FBI agents interviewed McGill who confessed to the two robberies (August 10th and August 21st) and signed a statement confessing to each robbery. The defendant also explained that on the day of the first robbery, he paid $586 with cash from the bank heist for a round-trip airline ticket to Florida. The FBI agents also discovered that on the day of the second robbery he purchased a used car for $1,250 in cash.

On September 4, 1992, the date of McGill's arrest and confession, the defendant allegedly attempted to escape from incarceration at the Metropolitan Correctional Center in Chicago, Illinois ("MCC"). A guard was alerted by some noise emanating from McGill's holding cell, he went to the cell and discovered the defendant standing on top of the toilet with his head sticking through the ceiling (McGill had torn down a piece of ceiling tile). The guard ordered McGill down and made out a report reflecting his opinion that the inmate was attempting an escape into the ceiling area.[1]

Despite his confession to the FBI agents, McGill pled not guilty. At trial Gary Police officer Roger Smith testified that the defendant had a note in his possession at the time of his arrest. The defense moved for a continuance to investigate the existence of this alleged note. The Assistant U.S. Attorney explained to the court that there was no note whereupon both attorneys agreed to enter the following stipulation which the court read to the jury:

Ladies and gentlemen of the jury, it has been stipulated between the parties that this witness has testified that a note was on the person of Jarrett McGill on September 4th, 1992. That is incorrect. Assistant United States Attorney Clarence Butler, Jr. has provided an open file to Attorney John McGrath since the start of this proceeding and has provided him with everything in his possession since his representation in this matter. The Assistant United States Attorney does not have any knowledge of any such note. The stipulation is signed by defense attorney John McGrath and by Assistant United States Attorney Clarence Butler, Jr.[2]

After the trial, the jury returned guilty verdicts on both counts.

## II. *ISSUES*

The defendant argues that the trial court erred in refusing to grant defense counsel's motion for a continuance and in allowing an improper and prejudicial stipulation to be read to the jury. The defendant also contends that his sentence should not have been increased for obstruction of justice as there was insufficient evidence presented by the government to warrant the conclusion that he had participated in an attempt to escape from custody.

## III. *DISCUSSION*

### A.

In challenging his conviction, McGill claims that the trial court improperly refused to grant a continuance to the defense to ascertain whether the defendant had in his possession a certain note at the time of his arrest. The defendant also argues that the court erred by reading the improper and prejudicial stipulation to the jury. Our re-

1. On September 8, 1992, defense counsel requested the court to order a mental competency examination to determine whether the defendant was fit to stand trial. The court so ordered and the defendant underwent a psychological evaluation at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri. The defendant was found to have an average IQ and there was no evidence that he was suffering from any mental defect, psychosis, depression or suicidal ten-

dencies. Presentence Report at 9, ¶ 50–51 (March 1993).

2. This stipulation that the attorneys drafted is factually incorrect because McGill *did* have a "scribbled" note on a "crunched up" piece of paper in his pocket at the time of arrest but the note said nothing about a bank robbery and bore no resemblance to the previous hold up notes he had used.

view of the transcript reveals that defense counsel failed to preserve these two arguments, and thus forfeited them, because he agreed that a stipulation would negate the need for a continuance and he participated in drafting the stipulation. Thus, our review is limited to plain error. *United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993).

■ During the defense's cross-examination of police officer Roger Smith, Smith testified that the defendant had a note in his pocket. Further examination outside the presence of the jury revealed that McGill in fact did have a note on him but the note officer Smith was referring to was a "scribbled" and "crunched up" piece of paper having nothing to do with a bank robbery (in contrast to the demand bank robbery notes he handed to the tellers on the occasion of each of the two prior bank robberies). At trial for the August 10, 1992 and August 21, 1992 bank robberies, defense counsel moved for a continuance to allow him to inspect the files of the Gary Police Department and attempt to find the alleged note. After the Assistant U.S. Attorney agreed to stipulate that the officer's testimony regarding the note was misleading, the court denied the motion. Defense counsel agreed that such a stipulation was a sufficient remedy. The two attorneys presented the court with the poorly drafted and inaccurate stipulation which we have recited in full *supra.* Based on defense counsel's agreement at trial that the stipulation would remedy the surprise testimony and counsel's participation in drafting as well as signing the stipulation, we hold that the defendant has waived any challenge to the motion for a continuance and the stipulation. Thus, we review for plain error. A plain error is one that "affects substantial rights" and "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano,* — U.S. at — – —, 113 S.Ct. at 1776–78; *United States v. Davis,* 15 F.3d 1393, 1407 (7th Cir.1994) (under plain error review defendant must demonstrate "that there was error, that the error was plain, that the plain error affected his substantial rights, and that the plain error which affected his substantial rights *also* seriously affect-

ed the fairness, integrity, or public reputation of judicial proceedings").

The defendant argues that the court's refusal to grant a continuance prejudiced his case because a significant aspect of the defense was that McGill did not have a note on September 4, 1992 when he entered the bank. We are at a loss to understand what prejudice occurred. The best result that defense counsel could have hoped for from a continuance was to prove through cross-examination that the note did exist but displayed no resemblance whatsoever to the demand bank robbery notes he had used in his bank robberies of August 10 and August 21, 1992. This is the very fact to which the Assistant U.S. Attorney and defense counsel stipulated, thus no prejudice resulted.

■ Secondly, the defendant argues that the wording of the stipulation was prejudicial because it "communicated to the jury that the Assistant United States Attorney, who was not sworn like all other witnesses nor subject to cross-examination, was a man of his word and had gone out of his way to disclose his evidence to the defense before trial. Such comment has no place at trial...." The wording that McGill challenges in the stipulation read: "Assistant United States Attorney Clarence Butler, Jr. has provided an open file to Attorney John McGrath since the start of this proceeding and has provided him with everything in his possession since his representation in this matter. The Assistant United States Attorney does not have any knowledge of any such note." We are of the opinion that because of the overwhelming amount of evidence against McGill, the defendant has failed to satisfy his burden in demonstrating that the denial of the continuance and the wording of the stipulation constituted plain error. The evidence included the eye-witness testimony of bank tellers Phyllis Simpson and Kristi Kallas who identified McGill as the one who committed the bank robberies on August 10 and August 21, 1992. Furthermore, McGill voluntarily provided a detailed written confession of these two bank robberies. Additionally, the government introduced evidence of sizable cash purchases McGill made on the days of the robberies ($586 for a plane ticket and

$1,250 for a used car). The overwhelming evidence of guilt dispels any notion that the defendant's substantial rights were affected by the wording of the stipulation. Thus, we affirm the district court.

### B.

The defendant also argues that the sentencing judge erred by enhancing his sentence two levels for obstruction of justice under United States Sentencing Guidelines ("U.S.S.G.") § 3C1.1. The Guideline states: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." *Id.* We review the district court's factual determinations at sentencing under the clearly erroneous standard. 18 U.S.C. § 3742(e); *United States v. Beal,* 960 F.2d 629, 632 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 230, 121 L.Ed.2d 166 (1992). "A finding of fact is clearly erroneous only if, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *Id.* (citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (citation omitted). In regard to what evidence is admissible at sentencing, "Congress has expressly permitted the use of hearsay in sentencing proceedings, Fed. R.Evid. 1101(d)(3), to prevent the sentencing hearing from becoming a full-blown trial with 'an endless parade of witnesses.' " *United States v. Johnson,* 997 F.2d 248, 254 (7th Cir.1993) (citations omitted). Because the defendant "has a due process right to be sentenced on the basis of reliable information," *id.* (citation omitted), the sentencing court may only rely on hearsay when it is "reliable" and the defendant has "a reasonable opportunity to rebut [the] contested hearsay." *Id.* (citation omitted). "Only if a defendant 'shows that the information before the court was inaccurate, and that the court relied on it' can the defendant successfully challenge his sentence." *Id.* (citation omitted).

The evidence presented to the sentencing judge on the obstruction of justice issue came from McGill's Probation Officer who stated in the Presentence Report ("PSR") and testified at the sentencing hearing that he received a report from an inmate system officer at the Chicago, Illinois Metropolitan Correctional Center ("MCC") concerning McGill's attempted escape on September 4, 1992. The report stated that when the officer heard some noise from McGill's holding cell he investigated and found McGill standing on top of the toilet with his head protruding through a hole in the ceiling tiles. The probation officer's testimony made clear that McGill had "torn" the tile down from the ceiling in preparing for his attempted escape. The defense attorney cross-examined the Probation Officer, Joseph Sus, who added that when McGill was placed in the cell he rattled the bars to check if they were secure. In arguing to the court, defense counsel did not contest the facts concerning McGill's standing on the toilet with his head sticking through a hole in the ceiling, but counsel suggested that another reasonable interpretation of the facts was that McGill had tried to commit suicide. The judge refused to accept this alternative explanation for his actions as being credible.

On appeal, defense counsel raises several concerns regarding the obstruction of justice enhancement: (1) that it is inconceivable that McGill would attempt to escape on the same day he gave a written confession to the FBI; (2) the commentary to the Guidelines directs the sentencing court to consider the seriousness of the conduct; and (3) the government should have called the guard to testify at sentencing or at least obtained his affidavit.

We will consider each argument in turn. Concerning the claim that it is inconceivable that McGill would attempt to escape on the very day he gave a written confession to the FBI, it appears as if counsel is asking us to conclude that McGill was not attempting an escape but rather was attempting something else, i.e., suicide. As we stated above, under the clearly erroneous standard of review when there are two permissible views of the evidence the factfinder's selection of one of the two reasonable choices cannot be clearly

erroneous. The sentencing judge was presented with both theories of what McGill was intending to accomplish when observed standing on the toilet with his head sticking through a hole in the ceiling, thus his decision adopting the position that McGill was attempting to escape cannot be clearly erroneous. *Beal,* 960 F.2d at 632.

Secondly, defense counsel suggests that the court failed to consider the commentary to U.S.S.G. § 3C1.1 which focuses on the seriousness of the defendant's conduct in obstructing justice, i.e., attempting to escape. To the contrary, the judge specifically referred to the Guidelines commentary and noted that Application Note 3(e) gives as one example of conduct warranting the enhancement "escaping or *attempting to escape* from custody before trial or sentencing...." U.S.S.G. § 3C1.1 comment. (n. 3(e)) (emphasis added). Defendant cites *United States v. White,* 903 F.2d 457 (7th Cir.1990) to support his claim that attempting escape is an insufficient basis for the enhancement. In *White,* the defendant was trying to avoid arrest as opposed to McGill's attempt to escape from custody. The Sentencing Guidelines clearly state that the obstruction of justice enhancement applies when the defendant "escap[es] or attempt[s] to escape from custody before trial or sentencing...." U.S.S.G. § 3C1.1 comment. (n. 3(e)). Thus, unlike *White,* the defendant's conduct *in attempting to escape while in custody* merits the two-level enhancement under the Guidelines. *Id.*

■ Finally, McGill argues that because the obstruction enhancement resulted in a fifteen-month increase in his sentence, the government should have called the MCC guard or obtained his affidavit to verify the facts of the alleged escape. As we stated above, hearsay is admissible at sentencing so long as it is "reliable" and the defendant has "a reasonable opportunity to rebut contested hearsay." *See Johnson,* 997 F.2d at 254; *United States v. Campbell,* 985 F.2d 341, 348 (7th Cir.1993). If the defendant wanted to call the MCC guard to testify concerning McGill's escape attempt, he had the power of subpoena at his disposal to compel the guard's attendance at the sentencing hearing. *Id.* at 253–54 n. 4. Moreover, if defense

counsel wanted an expanded evidentiary hearing to determine the facts surrounding the attempted escape, he could have requested one. Defense counsel did not see fit to subpoena the MCC guard nor request a more thorough evidentiary hearing, thus we review the record before us which only includes the evidence presented to the trial court. We find no error in the court's reliance on the evidence presented, i.e., the probation officer's testimony as to what the MCC guard reported. There is nothing in this record to even suggest that the probation officer's testimony was unreliable, indeed, the defendant did not object to the facts at sentencing nor on appeal, rather he maintains that the facts do not support the conclusion McGill was trying to escape. As explained above, however, when there are two permissible views of the evidence the factfinder's choice between them cannot be clearly erroneous. *See supra.*

The dissent suggests that we remand the sentencing determination for a number of reasons: (1) the defendant's escape attempt was so bizarre that it calls his mental competency into question; (2) there was insufficient evidence at sentencing to establish the defendant "willfully" attempted to escape; and (3) the sentencing judge relied solely on the hearsay testimony of the probation officer to uphold the obstruction of justice enhancement.

The defendant underwent a psychological exam prior to trial which revealed that the defendant was competent to stand trial and further that he did not suffer from any mental defects, nor was he psychotic, depressed or *suicidal.* Presentence Report at 9, ¶ 50–51. Moreover, at the sentencing proceeding, defense counsel clearly disavowed any reliance on the defendant's lack of mental competence.

THE COURT: Was the motion [for a competency examination to stand trial] renewed in [this case] Mr. McGrath?

[DEFENSE COUNSEL]: No, Your Honor.

THE COURT: Why was it not renewed in [this] case?

[DEFENSE COUNSEL]: Because he was found to be competent and fit and it con-

firmed what I believed, and it explained my points of concern.

THE COURT: So you are not pursuing that motion?

[DEFENSE COUNSEL]: That's correct, I was not.

THE COURT: Therefore you didn't file it in the case before me?

[DEFENSE COUNSEL]: That's correct, Your Honor.

THE COURT: So, there is no issue in front of me as to the mental competency of this Defendant to assist you in his defense during the trial or to proceed to that trial that was held.

[DEFENSE COUNSEL]: Absolutely not, Your Honor, and I'm not seeking deviation because of that problem for mental capacity or ability.

THE COURT: So there's no need for me to even make a finding, I presume, because that motion was never made in my case.

[DEFENSE COUNSEL]: That's correct, Your Honor. I believe it was completely disposed of....

This exchange clearly reveals that the court was informed that McGill underwent an examination after the escape attempt and shortly before trial to determine his competency to stand trial. Moreover, defense counsel assured the court that the defendant was found competent to stand trial and he was no longer challenging the defendant's mental competency. The dissent would have us infer that because the defendant underwent an examination to determine his mental competence to stand trial combined with his alleged "irrational" behavior in his prison cell (attempting to escape), that it is likely he was suffering from a mental defect and unable to attempt a "willful" escape. On the contrary, as stated above, the examination not only revealed that he was competent to stand trial but the examiner's report went on to find that he was able "to think abstractly, and his intellectual functioning appeared to be within normal limits. The defendant was found to have an average IQ, and there was no evi-

dence that he was suffering from any mental defect. They further found that he was not psychotic, depressed or suicidal." Presentence Report at 9, ¶ 50–51. Based on the psychological report's finding that McGill possessed normal reasoning ability and was not suicidal as well as the fact that the defendant never raised the issue of his mental competence at sentencing, the trial judge was not clearly erroneous in concluding that the defendant's conduct (tearing a hole in the ceiling of his cell) was a willful escape attempt as opposed to a suicide attempt.

■ The dissent's second and third arguments go hand in hand. The dissent claims that there was insufficient evidence to establish the defendant "willfully" attempted to escape because the only evidence was the hearsay testimony of the probation officer.[3] We disagree. As explained above, hearsay testimony is admissible at sentencing provided that the hearsay is "reliable" and the defendant has a "reasonable opportunity to rebut [the] contested hearsay." *Johnson*, 997 F.2d at 254. While the government did have the burden of proving the defendant "willfully obstructed or impeded" justice, U.S.S.G. § 3C1.1, the government was only obligated to establish the defendant's willful conduct by a preponderance of the evidence. *United States v. Chandler*, 12 F.3d 1427, 1434 (7th Cir.1994). The court heard testimony describing the defendant's actions (he was found standing on a toilet with his head sticking through a hole he had made in the ceiling). (In the absence of any contrary evidence, we are of the opinion that this testimony establishes by a preponderance of the evidence the defendant was willfully attempting to escape from custody). The court was also presented with two theories explaining the defendant's actions: escape and suicide. The judge found McGill was attempting to escape. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Beal*, 960 F.2d at 632. We are of the opinion that the defendant's behavior is not that "irrational" for escape attempts are quite common, and what better way to es-

---

**3.** It is interesting that the dissenting judge speculates on a theory not raised by the defendant, i.e.,

McGill's ability to "willfully" attempt an escape.

cape a prison cell than through the area above the ceiling where the air conditioning and heating ducts and pipes are located. Notably the defendant did not request an expanded evidentiary hearing or seek to call any witnesses to disprove the escape theory. After a brief cross-examination of the probation officer, defense counsel informed the court that he had no evidence to present and during his argument informed the court that "there is no dispute as to the facts." Even on appeal, defendant's counsel does not challenge the facts, he merely argues that the trial court accepted the wrong inference from those uncontested facts. Accordingly, we refuse to accept the dissent's contention that the evidence was unreliable and a remand is necessary for further factual findings. We affirm the two-level enhancement for obstruction of justice.

## IV. *CONCLUSION*

The conviction and sentence of defendant Jarrett McGill are

AFFIRMED.

CURTIN, District Judge, dissenting.

I agree with the majority that the conviction should be affirmed. However, I would remand on the issue of the two level enhancement for obstruction of justice. The central question is whether there is sufficient reliable evidence to support a finding of obstruction under the U.S.S.G. § 3C1.1(e).

At the outset, I believe that the position taken by the majority may be technically correct. The defense counsel had the opportunity to offer additional evidence or challenge the admission of the probation officer's testimony but did not do so. He merely argued that the incident could be interpreted differently. Therefore, since the probation officer offered the only evidence, the district judge could come to the conclusion that McGill was in fact trying to escape.

However, as stated by the majority, the evidence presented must be reliable. *United States v. Johnson,* 997 F.2d 248 (7th Cir. 1993). The circumstances here are so extraordinary that the reliability of the evidence is immediately called into question. If

we assume that the appellant was mentally competent, it is very difficult to conclude that he or any other reasonable person could believe that he had any chance to escape from the federal holding center by pushing ceiling tiles out of his cell.

Other circuit courts have ruled that in order to warrant a § 3C1.1 enhancement, the guidelines require that the defendant "consciously act with the *purpose* of obstructing justice." *United States v. Stroud,* 893 F.2d 504, 507 (2d Cir.1990); *see also United States v. Draper,* 996 F.2d 982 (9th Cir.1993). Although the word "willfully" was deleted from the title of § 3C1.1 in November 1992, after *Stroud* and *Draper* were decided, the body of the section still reads:

> If the defendant *willfully* obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1(e) at 247 (11/1/92) & App.C. at 163 (emphasis added). Therefore, the district court must still determine whether the *mens rea* requirement has been met before enhancing the defendant's sentence under this section. In the present case, the court did not have enough evidence before it to determine whether the defendant willfully attempted to obstruct or impede justice. On the contrary, the court was notified that McGill was given psychological tests after the incident occurred. App. at 4. Although he was judged mentally competent to stand trial, the very fact that testing was found necessary should have alerted the court that further inquiry was needed to determine why McGill acted the way he did in his cell on September 4.

The majority correctly states that the district court's factual determinations at sentencing must be reviewed pursuant to 18 U.S.C. § 3742(e), which provides that the Court of Appeals shall give due regard to the opportunity of the district court judge the credibility of the witnesses and shall accept findings of fact unless clearly erroneous. Moreover, the district court may consider hearsay evidence at sentencing proceedings. Fed.R.Evid. 1101(d)(3).

In this case, the district judge relied solely upon the report of the probation officer. The report of the inmate system officer who observed the event was not admitted nor was he produced as a witness. The district judge was surprised to learn for the first time in the presentence report that McGill had undergone a psychiatric examination prior to trial to determine his mental competency. The district judge apparently never looked at the psychiatrist's report. In light of the irrational nature of McGill's activities in his holding cell, the minimal hearsay evidence offered by the government to show appellant's willful obstruction of justice must be deemed inadequate for such a finding even though defense counsel did not take the opportunity to which he was entitled to rebut the contested hearsay by calling the guard or presenting other evidence in support of an alternative explanation. Even under the clearly erroneous standard, which gives the district court considerable discretion in reaching a conclusion based on the facts at its disposal, this court should find the sole evidence presented to the district court unreliable and remand for a further hearing on whether the activities by the inmate system officer constituted willful obstruction of justice.