**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Nakia R. FRANCIS and Stanley D. Crume, Defendants–Appellants.**

Nos. 94–1002, 94–1003.

United States Court of Appeals, Seventh Circuit.

Argued May 10, 1994.

Decided Nov. 10, 1994.

Robert T. Coleman, Asst. U.S. Atty., (argued), Office of the U.S. Atty., Criminal Div., Fairview Heights, IL, for U.S.

Mark C. Hunter (argued), Metropolis, IL, for Nakia R. Francis.

Ward E. Walshon (argued), Mounds, IL, for Stanley D. Crume.

Before COFFEY, MESKILL * and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Nakia R. Francis and Stanley D. Crume pleaded guilty to conspiracy to distribute cocaine base and possession with the intent to distribute cocaine base. 21 U.S.C. §§ 841(a)(1), 846. Crume also entered a plea of guilty to possession of a firearm in relation to a drug trafficking offense. 18 U.S.C. § 924(c)(1). Francis was sentenced to 228 months of imprisonment to be followed by five years of supervised release. Crume was sentenced to 189 months of imprisonment on the conspiracy and possession counts to run consecutively with his 60 month sentence on the possession of firearm count. He was also given a term of supervised release of five years. On appeal, both defendants argue that the district court erred in denying each of them the additional one-level reduction under U.S.S.G. § 3E1.1(b) for timely acceptance of responsibility. Francis also chal-

* The Honorable Thomas J. Meskill, of the Second Circuit, is sitting by designation.

lenges the district court's use of hearsay evidence in calculating his base offense level, *see* U.S.S.G. §§ 2D1.1, 6A1.3, p.s., and the enhancement for obstruction of justice under U.S.S.G. § 3C1.1. We affirm the sentences of each of the defendants.

## I. Background

Nakia Francis and his co-defendant Stanley Crume were involved in a drug distribution chain transporting crack cocaine from Houston, Texas to Cairo, Illinois. Francis and Crume were responsible for distributing and coordinating the distribution of the crack cocaine in Cairo, Illinois. The group used Crume's residence in Cairo, and later a trailer in Wickliffe, Kentucky to cut and package the crack cocaine. In November 1992, Francis was charged with possession with the intent to distribute one kilogram of cocaine in Alexander County, Illinois. The day after he was arrested, Francis gave a statement to FBI agent Stonecipher admitting his involvement in the conspiracy and implicating his co-conspirators Charles B. Ashley, Billy Ray Ashley, Craig C. Ashley, and Shauna Sylvester. Thereafter, Francis, the four individuals he had implicated, Crume and several others were charged in a superseding indictment with conspiracy to distribute cocaine.

On or about March 4, 1993, Francis signed an affidavit retracting his statements concerning the four individuals whom he had implicated in his earlier statement to the FBI. He stated in his affidavit:

NAKIA FRANCIS, being first duly sworn upon oath, deposes and states as follows:

1. That he is a defendant in a Federal criminal prosecution.

2. That on a prior date I gave a statement regarding the following persons about their involvement in a criminal matter:

Charles B. Ashley

Billy Ray Ashley

Craig C. Ashley

Shauna Sylvester

3. That the information I gave was false.

4. Therefore, I hereby retract any and all statements and information given against these named people.

5. That I am willing to appear before any judge or magistrate to retract the same on the Court record.

At the first pre-trial conference held on March 5, 1993, Crume allegedly expressed his intention to plead guilty, although he did not enter a plea at that time but continued to discuss and negotiate the applicable guideline range and possible sentence with the government's attorneys. The district court postponed the trial date from March 22 to May 1993 for all defendants. Thereafter, the government filed a motion to sever Francis from the rest of the defendants which was successfully opposed by Francis. It also moved to compel Francis, Crume and others to provide handwriting exemplars. After various adjournments of the trial, the case against Charles B. Ashley was dismissed, and a second superseding five-count indictment was returned in August 1993 against Francis, Crume and the other co-conspirators. The trial was then reset for October 18, 1993. Francis and Crume each entered a plea of guilty after the final pre-trial conference on October 8 and approximately one week before the trial. The remaining defendants proceeded to trial before Judge Gilbert on the date scheduled for trial, and were found guilty as charged in the second superseding indictment.

At Francis's sentencing hearing, the government called only one witness, FBI Agent Greg Holston,[1] to testify as to the amount of crack cocaine attributable to Francis and his co-conspirators. In addition to testifying as to his knowledge as the case agent, Holston recounted the testimony of the government's witnesses who testified at the trial of Francis's co-defendants. Specifically, Agent Holston's testimony was drawn from cooperating individuals, the trial testimony of Francis's co-conspirators, Western Union records and police reports.

Holston testified that Francis was arrested on December 8, 1993 with 23.7 grams of

---

1. Agent Holston was a member of the task force consisting of the FBI and local authorities that investigated the drug group to which Francis and Crume belonged.

crack cocaine in his possession, and that the 23.7 grams was part of a 17–ounce, or approximately 481–gram, shipment Francis was responsible for transporting from Houston to Cairo in December 1992. According to Holston, two of Francis's co-conspirators testified at the co-defendants' trial that they had accompanied Francis to Texas and obtained the 17–ounce shipment of cocaine. Holston also stated that, based on the testimony of one of Francis's co-conspirators, he knew of three multiple-ounce shipments of cocaine that were delivered to Crume and Francis's trailer in Wickliffe, Kentucky. According to Agent Holston, this co-conspirator told the FBI that each of the shipments weighed up to nine ounces.

Further in support of its case, the government produced a summary record of Western Union money transfers made by Francis's group between June and November 1992. Holston stated that the Western Union record was introduced at the co-defendants' trial to demonstrate that a total of $37,300 was wired from Cairo to Houston as drug payments. According to Holston, there was testimony at the co-defendant's trial that crack cocaine was being sold at $1,000 per ounce in Houston, Texas at the time of the money transfers and that the $37,300 would translate into over 1,000 grams of crack cocaine.

The district court found that Francis's relevant conduct involved at least 500 grams, but not more than 1.5 kilograms of crack cocaine, placing Francis's base offense level at 36 for sentencing. The court stated that its finding was based on not only Agent Holston's testimony and the $14,000 money transfers Francis had personally made, but also on the totality of the evidence presented during the co-defendants' trial. The district court enhanced Francis's sentence by two levels, finding that Francis's retraction of statements concerning his co-defendants' criminal involvement was consistent with "the elements contained in the sentencing guidelines for obstructing justice." Finally, the court gave Francis a two-level reduction

for acceptance of responsibility. The court found, however, that Francis was not entitled to the additional one-level reduction under U.S.S.G. § 3E1.1(b) because the guilty plea was entered only a week before the trial date. At a sentencing hearing held on the same day, the district court also denied Crume the reduction under U.S.S.G. § 3E1.1(b) apparently for the same reason.

## II. Analysis

### A. Acceptance of Responsibility

██ Both defendants challenge the district court's denial of the additional level of reduction under U.S.S.G. § 3E1.1(b) for early acceptance of responsibility. The district court's acceptance of responsibility determination under U.S.S.G. § 3E1.1 is a factual determination, and will be overturned only if clearly erroneous. *United States v. Robinson,* 20 F.3d 270, 273 (7th Cir.1994). The defendant bears the burden of proving by a preponderance of the evidence that he is entitled to the reduction under § 3E1.1(b). *Id.; United States v. Rivero,* 993 F.2d 620, 622 (7th Cir.1993).

Section 3E1.1(b)(2) provides that a defendant, who qualifies for the two-level decrease under subsection (a) and whose offense level is 16 or greater, may receive a third level reduction if he has "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." Both Francis and Crume argue that although they did not plead guilty until approximately one week before the trial, they had timely notified the authorities of their intention to plead guilty, warranting the § 3E1.1(b)(2) reduction.[2] Specifically, Crume claims that he notified the government as early as the first pre-trial conference in March, which was seven months before his guilty plea.

██ The defendants' argument must fail. Application Note 6 provides that to "qualify

2. It is unclear whether the district court was aware of when the defendants notified the authorities of their intention to plead guilty; the defendants did not mention the exact timing of

their notification in their objections to the presentence investigation reports nor during the sentencing hearings.

under subsection (b)(2), the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently." As the language of § 3E1.1(b)(2) and its application note make clear, subsection (b)(2) is designed to prevent the government from engaging in needless trial preparation and to give the overburdened trial courts an opportunity to allocate their limited resources in the most efficient manner. *See United States v. Robinson,* 14 F.3d 1200, 1203 (7th Cir.1993); *United States v. Morillo,* 8 F.3d 864, 871 (1st Cir.1993). *Cf. United States v. Tolson,* 988 F.2d 1494, 1499 (7th Cir.1993) (denying two-level reduction for acceptance of responsibility where plea of guilty was entered just before trial; "[t]he reduction for a timely acceptance of responsibility was not adopted with the idea that a defendant might lessen his or her sentence with a last minute, formalistic demonstration of remorse after the government has been forced to expend a great deal of time and resources in gathering an overwhelming case."). Thus, an early notification of an intention to plead guilty does not by itself entitle a defendant to a reduction under subsection (b)(2) unless it served the purpose of conserving government and court resources. *See United States v. Kimple,* 27 F.3d 1409, 1413 (9th Cir.1994); *United States v. Tello,* 9 F.3d 1119, 1125 (5th Cir.1993) (timeliness of notification of intent to plead guilty equated with prosecution's ability to avoid trial preparation and court's ability to allocate its resources efficiently). *Cf. United States v. McConaghy,* 23 F.3d 351, 353 (11th Cir.1994) (suggesting that although avoiding trial preparation and the efficient allocation of court's resources are desirable consequences of subsection (b)(2), they are not determinative; case remanded on the ground that district court failed to make a specific finding as to whether the notification of intent to plead guilty was timely).

In this case, both Crume and Francis did not plead guilty until approximately one week before the trial, after various pre-trial conferences were held, and after the trial was rescheduled several times. Specifically, Francis did not plead guilty until approxi-mately 288 days after his initial arraignment and after two superseding indictments were filed. Francis also opposed a government motion to sever Francis from the other defendants. Similarly, Crume did not enter his plea of guilty until approximately 261 days after his initial arraignment and after the filing of a superseding indictment. Until the defendants actually pleaded guilty, they could still change their minds and the government still had to prepare for the contingency that the defendants might elect to go to trial. *See Morillo,* 8 F.3d at 872 (stating that a conditional offer to plead guilty does not serve § 3E1.1(b)'s purpose of conserving government and court resources because "until the contingency is removed, the prosecution must still prepare for trial"). Indeed, despite the defendants' argument that the government was aware of their intention to plead guilty as early as March 1993, there were a number of motions filed by the government in April to sever Francis from the remaining defendants as well as to compel Francis and Crume to provide handwriting exemplars. Moreover, as the government argues in this case, it had started preparing for Francis and Crume's trial before they actually pleaded guilty one week before the trial. Even though a trial was to be held anyway for the other four defendants, the government was obviously forced to specifically prepare for each and every defendant including Francis and Crume. Thus, the district court could conclude that the defendants have wasted enough government resources not to qualify for the additional level of reduction under § 3E1.1(b). *See Robinson,* 14 F.3d at 1203 (guilty plea filed four days before trial did not entitle defendant to extra one point reduction; stating that "[n]either four days, nor seven days, nor seven-plus-a-few days … was 'timely notice' within the meaning of § 3E1.1(b)(2)" where the government argued that the notice it received did not allow it to "avoid preparing for trial" and that it had expended "considerable funds and effort" preparing for defendant's trial); *see also United States v. McClain,* 30 F.3d 1172 (9th Cir.1994) (guilty plea entered eleven days before trial was untimely for purposes of § 3E1.1(b)(2)). As the First Circuit states, a defendant who "stands poised on the

brink of trial has no entitlement to the [(b)(2) reduction]." *Morillo*, 8 F.3d at 872. *See also United States v. Donovan*, 996 F.2d 1343, 1345 (1st Cir.1993) (per curiam) (plea agreement reached on the eve of the second trial date does not entitle defendant to the third level reduction under § 3E1.1(b)(2) for early acceptance of responsibility).

██ Francis also argues that his statement to the FBI the day after his arrest concerning his own involvement in the conspiracy entitles him to the additional one-point reduction under § 3E1.1(b)(1). Under subsection (b)(1), a defendant also can be given a third level reduction if he "timely provid[ed] *complete information* to the government concerning his own involvement in the offense." (emphasis added). It is undisputed that Francis initially provided the FBI with details of his involvement in the conspiracy. But, a few months later, he saw fit, for reasons unexplained, to retract portions of his statement concerning the involvement of his co-conspirators. In the context of a conspiracy where the very nature of the charge depends on the interrelationship of the co-conspirators and their respective roles in the organization, a defendant's denial of his co-conspirators' involvement could directly affect the seriousness and scope of his own offense and minimize his culpability. This is true especially because in a drug conspiracy, a defendant's sentence is imposed on the basis of not only his own conduct but also the conduct of co-conspirators that was in furtherance of the conspiracy and reasonably foreseeable to the defendant. *United States v. Savage*, 891 F.2d 145, 149–51 (7th Cir. 1989). Even if the defendant's main motivation was to protect his co-conspirators, the result would still be less than a "complete" account of his own involvement in the conspiracy. Thus, the district court concluded and we agree that Francis failed to meet the requirement of "timely providing complete information to the government concerning his own involvement in the offense" under subsection (b)(1). *Cf. United States v.*

*Stoops,* 25 F.3d 820, 823 (9th Cir.1994) (where defendant timely provided complete information to the government, he is entitled to a reduction under § 3E1.1(b)(2) even though he later moved to suppress his confession).

### B. Hearsay Testimony

██ Francis next argues that the district court improperly relied on Agent Holston's hearsay statements in calculating his base offense level. It is well-established that the Federal Rules of Evidence do not apply to sentencing hearings. *United States v. Morales*, 994 F.2d 386, 389 (7th Cir.1993); U.S.S.G. § 6A1.3(a), p.s.[3] Because of the congressional intent to "prevent the sentencing hearings from becoming full-blown trials with 'an endless parade of witnesses,'" *United States v. McGill*, 32 F.3d 1138, 1143 (7th Cir.1994) (citing *United States v. Johnson*, 997 F.2d 248, 254 (7th Cir.1993)), a sentencing judge is free to consider a wide range of information, including hearsay evidence, regardless of its admissibility at trial. *United States v. Beler,* 20 F.3d 1428, 1432 (7th Cir. 1994); *United States v. Corbin*, 998 F.2d 1377, 1385 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1124, 127 L.Ed.2d 432 (1994). The law is clear that a sentencing judge must consider a defendant's entire criminal history as well as all relevant information in order that he might make an informed decision as to the proper punishment. *United States v. Torres*, 977 F.2d 321, 330 (7th Cir.1992). To achieve that purpose, we have acknowledged that hearsay is an acceptable basis for a sentencing determination. *United States v. Smith*, 3 F.3d 1088, 1100 (7th Cir.1993) (citing *United States v. Badger*, 983 F.2d 1443, 1459 (7th Cir.1993)), *cert. denied,* —— U.S. ——, 114 S.Ct. 733, 126 L.Ed.2d 696 (1994); *see also Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949); *United States v. Escobar–Mejia*, 915 F.2d 1152, 1154 (7th Cir. 1990). We also wish to make clear that

---

**3.** Section 6A1.3(a) of the sentencing guidelines provides in part:

In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

Congress, in its wisdom, has seen fit to expressly permit the use of hearsay evidence in sentencing proceedings. *See McGill*, 32 F.3d at 1143 (citing Fed.R.Evid. 1101(d)(4)).

■ Francis argues that the use of hearsay testimony violated the Confrontation Clause of the Sixth Amendment, an argument that was already rejected by us in *United States v. Badger*, 983 F.2d 1443, 1459 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993). In *Badger*, the district court relied in part on a co-conspirator's proffer to the government in calculating the amount of drugs attributable to the defendant. In rejecting the defendant's claim of violation of the Confrontation Clause because the co-conspirator neither testified at trial nor at the sentencing hearing, we said that "a convicted defendant does not possess a constitutional right to cross-examine a person who provided the government with information that was later used during sentencing." *Id.* We are confident that our holding in *Badger* applies with equal force here. The Sixth Amendment accords an accused the right to confront the witnesses against him in a "criminal prosecution." U.S. Const. amend. VI. A sentencing hearing, however, is not a "criminal prosecution" within the meaning of the Sixth Amendment because its sole purpose is to determine only the appropriate punishment for the offense, not the accused's guilt. *See United States v. Wise*, 976 F.2d 393, 400–01 (8th Cir.1992) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 1592, 123 L.Ed.2d 157 (1993). Thus, even with the dramatic changes in the sentencing process brought about by the Sentencing Guidelines, the pre-Guidelines policy of allowing sentencing courts to obtain all relevant sentencing information without the strictures of the right of confrontation remains intact. *Id.* at 400; *United States v. Beaulieu*, 893 F.2d 1177, 1180 (10th Cir.), *cert. denied*, 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). Our holding is in agreement with the eight other circuits that

have addressed the issue. *See United States v. Petty*, 982 F.2d 1365, 1370 (9th Cir.) (collecting cases), *amended on other grounds*, 992 F.2d 1015 (9th Cir.1993).

■ However, a defendant is entitled to be sentenced on the basis of reliable information. *Johnson*, 997 F.2d at 254; *Morales*, 994 F.2d at 389; *United States v. Campbell*, 985 F.2d 341, 348 (7th Cir.1993). Thus, we have required that the hearsay evidence relied on by the sentencing court must be reliable, *Beler*, 20 F.3d at 1432–33; *United States v. Kozinski*, 16 F.3d 795, 818–19 (7th Cir.1994), and that the defendant must have a reasonable opportunity to rebut the hearsay evidence used against him. *Johnson*, 997 F.2d at 254 (citing *Campbell*, 985 F.2d at 348). We accord due deference to the district court's determination as to the reliability of the hearsay evidence, and review that ruling only for an abuse of discretion. *Johnson*, 997 F.2d at 254. Only if a defendant "show[s] that the information before the court was inaccurate, and that the court relied on it" can he successfully challenge his sentence. *Id.; United States v. Musa*, 946 F.2d 1297, 1306 (7th Cir.1991).

In this case, the district court found that Agent Holston's hearsay testimony was reliable. Agent Holston's testimony concerning the quantity of drugs attributable to Francis's group was corroborated by the summary record of the group's Western Union money transfers between June and November 1992.[4] The summary record established that Francis and his co-conspirators transferred a total of $37,300 from Cairo to other co-conspirators in Houston. As the district court specifically noted, Francis personally transferred $14,000 to Houston. Given the rate of $1,000 per one ounce of crack cocaine in Houston, the group's money transfers would translate into approximately 1,050 grams of crack cocaine. Additionally, Judge Gilbert was the presiding judge at the co-defendants' trial, and had the opportunity to

---

4. In fact, under the sentencing guidelines, where the drugs actually seized from the defendant do not necessarily reflect the scope of his illegal activity, the district court must approximate the quantity of the drugs by considering such evidence as "the price generally obtained for the controlled substance, financial or other records, [and] similar transactions in controlled substances by the defendant." U.S.S.G. § 2D1.1, comment. (n. 12); *see also Beler*, 20 F.3d at 1432.

hear the evidence from which Agent Holston drew his hearsay testimony. *See Tolson*, 988 F.2d at 1497 (a trial judge has "the best 'opportunity to observe the verbal and non-verbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements,' as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record") (quoting *Churchill v. Waters*, 977 F.2d 1114, 1124 (7th Cir.1992)). Because Judge Gilbert had heard the sworn testimony and cross-examinations of Francis's co-conspirators, he was in the best position to determine the reliability of Agent Holston's testimony as to what Francis's co-conspirators had testified at trial.

Moreover, Francis had ample opportunity to cross-examine Agent Holston as well as "to present his side of the story." *United States v. Beal*, 960 F.2d 629, 634 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 230, 121 L.Ed.2d 166 (1992). Yet, he offered not a scintilla of evidence to rebut Agent Holston's hearsay testimony. While he had the full power of subpoena to summon witnesses on his own behalf, he made no attempt to call any of the witnesses upon whose statements Agent Holston relied. Although he claimed that he had expected to cross-examine his co-conspirators at sentencing and was surprised by the government's reliance on only the case agent's testimony, Francis made no request for a continuance to permit him to call the witnesses. *Cf. Morales*, 994 F.2d at 389 (holding that any argument of unfair surprise by the government's use of hearsay trial transcript at sentencing was forfeited in part by defendant's failure to ask for a continuance to permit him to read the transcript). Even in this court, Francis has failed to establish that the hearsay testimony relied on by the district court was inaccurate. Thus, Francis's challenge to his sentence on hearsay grounds is without merit.

### C. Obstruction of Justice

■ Finally, Francis argues that the district court erred in finding that his affidavit retracting statements of his co-conspirators'

criminal involvement "met the elements contained in the sentencing guidelines for obstructing justice." U.S.S.G. § 3C1.1. Francis contends that the enhancement was not warranted because the his retraction did not significantly obstruct or impede the government's investigation or prosecution. According to defendant Francis, who as far as we know is not a licensed attorney, the government had already obtained sufficient information to prosecute the individuals involved in the conspiracy even before he made his initial statement to the FBI, and thus, his subsequent retraction of those statements could not have actually obstructed justice.

■ We review the district court's factual determination of obstruction of justice for clear error. *United States v. Thomas*, 11 F.3d 1392, 1399 (7th Cir.1993); *United States v. Caicedo*, 937 F.2d 1227, 1233 (7th Cir. 1990). Section 3C1.1 provides that a two-level enhancement is warranted "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." Examples of obstruction of justice include "committing, suborning, or attempting to suborn perjury," and "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1, comment. (n. 3(b), (g)). In this case, Francis was facing a conspiracy charge when he retracted his statements concerning others involved in the conspiracy. The criminal investigation of the conspiracy was still underway and obviously any information concerning his co-conspirators was material evidence. In fact, a second superseding indictment was filed after Francis's retraction, and Charles B. Ashley, who was one of the four individuals initially implicated by Francis, was dismissed as a defendant. Thus, the district court was entitled to conclude that Francis's retraction caused the government to re-investigate as well as to re-evaluate its case, thereby impeding the investigation and prosecution of the case.

■ Moreover, as a general rule, actual prejudice to the government is not required

for an obstruction enhancement because § 3C1.1 calls for an enhancement not only when the defendant has actually obstructed justice but also when the defendant "attempted to obstruct or impede" the administration of justice. *See United States v. Stevenson*, 6 F.3d 1262, 1269 (7th Cir.1993); *Caicedo*, 937 F.2d at 1234; *United States v. Gaddy*, 909 F.2d 196, 199 (7th Cir.1990); *United States v. Patterson*, 890 F.2d 69, 72 (8th Cir.1989) ("Section 3C1.1 also encompasses 'attempted' which we construe as not requiring success in actual obstruction"). It is true that when the conduct involved making a materially false statement to a law enforcement officer, the application notes do require a showing of actual obstruction of justice before an enhancement may be imposed. *See United States v. Williams*, 952 F.2d 1504, 1515–16 (6th Cir.1991); *United States v. Jackson*, 935 F.2d 832, 849 (7th Cir.1991); *United States v. Fiala*, 929 F.2d 285, 290 (7th Cir.1991). Application Note 4(b) states that "making false statement, not under oath, to law enforcement officers . . ." does not warrant application of § 3C1.1 "unless Application Note 3(g) above applies. . . ." Application Note 3(g) states that an enhancement is warranted when the materially false statement "significantly obstructed or impeded the official investigation or prosecution of the instant offense." In this case, however, the district court based its enhancement on Francis's affidavit, which was a sworn statement and did not fall under the scope of Application Notes 4(b) and 3(g).

Francis's affidavit attesting to the falsity of his prior statement suggests either that Francis had lied when he initially spoke to the FBI or was committing perjury in his affidavit. In fact, based on the co-defendants' verdicts, the district court could find that Francis lied in his affidavit about his co-defendants' non-involvement in the conspiracy. *See Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (fact-finder's choice between two permissible choices cannot be clearly erroneous). *Cf. United States v. Jackson*, 935 F.2d 832, 849 (7th Cir.1991) (reversing obstruction of justice enhancement where the government failed to point to a single false statement made by the defendant but merely showed

that defendant failed to disclose all he knew about other co-conspirators' involvement in the drug operation). The district court could have cited Francis for perjury or false swearing, which is precisely the type of activity that § 3C1.1 contemplates, *see United States v. Barnett*, 939 F.2d 405, 407 (7th Cir.1991); U.S.S.G. § 3C1.1, comment. (n. 3(b)), and that at a minimum, Francis had attempted to obstruct the government's investigation of the conspiracy, warranting the § 3C1.1 enhancement.

## III. Conclusion

We AFFIRM the sentences of Nakia R. Francis and Stanley D. Crume.