**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2021
Decided August 18, 2021

*Before*

DIANE S. SYKES, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 21-1185

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:19-CR-00259(1) |
| ROBERT JOCKO, *Defendant-Appellant*. | Thomas M. Durkin, *Judge*. |

**O R D E R**

Robert Jocko pleaded guilty to robbing a bank. The government asserted he had robbed another bank six days earlier and asked the district court to treat that robbery as relevant conduct at sentencing. After holding an evidentiary hearing, the court found that Jocko had committed the other robbery and relied on that finding in calculating the applicable offense level under the Sentencing Guidelines. On appeal, Jocko argues the court erroneously shifted the burden onto him to prove that he did not commit the other robbery. We conclude that the district court appropriately responded to Jocko's

arguments, and it made no improper statements about the evidence or the government's burden of proof. So we affirm.

## A.   Background

On March 18, 2019, Jocko entered First American Bank in Riverside, Illinois and asked the teller for a cash withdrawal. Waving off the withdrawal slip the teller offered him, Jocko placed a bag on the counter, and told the teller multiple times to "put the money on the counter" and "hurry up." The teller put about $1,500 on the counter, which Jocko put in the bag before leaving the bank. Police officers apprehended Jocko shortly after the robbery and recovered the cash. In a nearby garbage can, the officers also found a black jacket matching the one Jocko wore during the robbery; in the pocket was a gun-shaped lighter. Jocko had not displayed a gun or a lookalike during this robbery.

Jocko pleaded guilty to bank robbery in violation of 18 U.S.C. § 2113(a). In the plea agreement, the parties set forth their respective positions on sentencing. The government asserted Jocko had robbed another bank on March 12, 2019, which should be considered along with his offense of conviction to calculate his guidelines range at sentencing. The government further asserted that, during the March 12 robbery, Jocko used a dangerous weapon, *see* U.S.S.G. § 2B3.1(b)(2)(D), which resulted in a total offense level of 26 for that robbery compared to 22 for the offense of conviction. Grouping the March 12 robbery with the offense of conviction, *see* U.S.S.G. § 3D1.4, resulted in an offense level of 28, which dropped to a total offense level of 25 after factoring in Jocko's acceptance of responsibility and timely guilty plea. With that total offense level and a criminal history category of V, the guidelines range would be 100 to 125 months' imprisonment. Jocko's position was that he did not commit the March 12 robbery, so his sentencing range should be 57 to 71 months' imprisonment based on a total offense level of 19 and a criminal history category of V. The parties agreed the court would have the final word on sentencing and that Jocko could not withdraw the plea if the anticipated calculations were rejected.

Because Jocko disputed that he had committed the March 12 robbery, the court scheduled an evidentiary hearing. The court granted Jocko's motion for the appointment of an investigator pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(e). The parties then agreed to proceed by submitting evidence and stipulations rather than calling witnesses. The government submitted 24 exhibits and 14 stipulations; Jocko did not submit an investigator's report or any other evidence.

Among the government's exhibits was a surveillance video (and screenshots from it) of First Midwest Bank in Lyons, Illinois on March 12, 2019, from approximately 2:15 p.m. to 2:17 p.m. It shows a person entering the bank wearing a mask, a bucket hat, sunglasses, and orange shoes, and carrying a red or orange bag. The person approached the counter and then quickly left the bank. The government also submitted a surveillance video and screenshots from BMO Harris Bank in Berwyn, Illinois at 4:45 p.m. the same day. The person in this video is also wearing a mask, a bucket hat, sunglasses, brightly-colored shoes, and carrying a red or orange bag. The person put what appeared to be a gun on the counter, took over $4,000 from the teller, and then left the bank.

The government argued the person in both videos from March 12 was Jocko—casing First Midwest, then robbing BMO Harris. To support this assertion, the government first highlighted the similarities between these incidents and the March 18 robbery of First American (to which Jocko had confessed), which was also captured on video. The person(s) at all three banks wore a surgical-style mask and brightly-colored shoes. At First Midwest and First American, they were orange athletic shoes with white soles; the screenshots from BMO Harris are not as clear but appear to show a brightly-colored shoe. A screenshot from First Midwest shows a tattoo on the person's left hand; a photograph of Jocko's left hand taken after his arrest shows a similar tattoo.

Jocko stipulated that the videos and screenshots are authentic, but he disputed that he is the person in either of the March 12 videos. He noted the masks in the three videos are different, and the bucket hat in the March 12 videos is different from the baseball hat that Jocko wore on March 18. Jocko further argued that orange athletic shoes are "extremely popular," so nothing could be inferred from that similarity. He also contended it is unclear whether his hand tattoo matches the one visible in the video and notes that no teller mentioned the robber having a hand tattoo. Finally, Jocko pointed out that investigators did not recover his fingerprints or DNA from BMO Harris, nor did they collect a voice exemplar from Jocko for the teller to identify.

The government also presented cell-phone location data from a phone number registered to Jocko. On March 12, the cell phone was near First Midwest Bank in Lyons between 2:05 p.m. and 2:19 p.m. and BMO Harris Bank in Berwyn between 4:40 p.m. and 4:55 p.m. The cell phone was also near First American Bank in Riverside on March 18, when Jocko robbed it. (Lyons, Berwyn, and Riverside are neighboring towns in Cook County, Illinois). Jocko responded the government had presented no evidence that he had the cell phone with him on the days and times at issue and police officers

never recovered the phone after his arrest. He also asserted that, because the government presented location data from the cell phone for only the days of the robberies, there is no way to know whether the cell phone was in the area on other days or if Jocko (with his phone) frequently traveled through these areas to visit friends or relatives or to commute to work.

Last, the government submitted photos of the black jacket with a gun-shaped lighter in its pocket, found shortly after Jocko's arrest for the March 18 robbery. Jocko did not show a gun (or a lookalike) then, but the person who robbed BMO Harris brandished an object that looked like a gun before demanding money. The government argued Jocko had displayed the gun-shaped lighter while robbing BMO Harris. Jocko responded that the lighter had not been tested for fingerprints, nor had it been identified by the BMO Harris teller.

The court held oral argument (by videoconference) after reviewing the briefs and evidence. The government contended it had demonstrated by a preponderance of the evidence that Jocko committed the March 12 robbery of BMO Harris. Again, it cited the cell-phone location data and the similarities between Jocko and the person in the screenshots of the surveillance videos. Jocko's counsel responded by again highlighting the differences among the surveillance videos, arguing about the popularity of orange shoes, and noting that no bank teller had identified a hand tattoo. Counsel also contested the importance of the cell-phone location data:

> The other thing that I think is important to look at is Mr. Jocko, he has relatives in the area, he was in the area of -- he – he – lives in the area, he has relatives in the area, he has friends in the area. He travels in that area virtually every single day.

After asking each party some clarifying questions, the court stated it would review all the evidence again before ruling.

A week later, the court orally ruled the government had proved by a preponderance of the evidence that Jocko robbed the BMO Harris bank on March 12. The court acknowledged the cell-phone location data could not pinpoint the exact location of the phone, but it also mentioned Jocko had provided no evidence that he often spent time in those areas, even though he had an investigator. The court discussed Jocko's counterarguments but concluded that the cell-phone location data; the proximity of the banks to each other; the colorful shoes, hand tattoo, and similar masks;

and the lack of an alibi or evidence disputing the government's, all made it more likely than not that Jocko committed the robbery.

Jocko's counsel objected, arguing the court improperly relied on Jocko's failure to present contrary evidence and his lack of an alibi, which shifted the burden of proof onto Jocko. The court responded "it is certainly the government's burden, I feel they've met it" and clarified that even without considering the failure to produce mitigating evidence, the finding would remain the same.

At sentencing, the court determined Jocko had a guidelines range of 100 to 125 months' imprisonment and then sentenced Jocko to 80 months in prison.

## B. Analysis

On appeal, Jocko argues the district court erred by requiring him to show that he did not commit the March 12 robbery, rather than requiring the government to prove its allegation. First, we must clarify the issues this appeal presents. Jocko's brief makes a passing reference to the court clearly erring in the factual finding, saying there are "compelling matters which cast serious doubt on [the court's] finding." Yet in the balance of his argument section, Jocko makes only the legal argument about burden-shifting without stating any reason why the court's factual finding is clearly erroneous based on the evidence. If Jocko intended to contest that finding, his argument is too perfunctory and underdeveloped to review. *See United States v. Gibson*, 996 F.3d 451, 468 (7th Cir. 2021).

Because Jocko asserts a procedural error with respect to the allocation of the burden of proof, our review is de novo. *United States v. Brown*, 973 F.3d 667, 708 (7th Cir. 2020). When the government asserts that conduct relevant to an offense should be considered at sentencing, it has the burden to prove the conduct by a preponderance of the evidence. *United States v. King*, 910 F.3d 320, 329 (7th Cir. 2018). By commenting on Jocko's lack of an alibi and his failure to present evidence in his defense, Jocko argues, the court relieved the government of its burden and violated Jocko's constitutional right to due process. He highlights four statements:

(1) "[T]here's no contrary evidence either. There's no alibi evidence, no relatives who testified or no information about relatives he may have visited, nothing submitted about his place of employment that would make it more likely true than not true that he was -- that the cell phone pings were for travel to and from

a job or to a relative's house or to his own house. I appointed an investigator on this case, and certainly if that information would have been gleaned by an investigator, I would have heard it."

(2) That the combination of evidence presented by the government and "the lack of an alibi all makes it more likely true than not true that Defendant Jocko committed the BMO Harris Bank robbery on March 12th."

(3) "There's no evidence presented -- and again, I appointed an investigator -- but no evidence presented that there was some kind of bank robbery spree in this period of time where not just these three banks were robbed, but a number of other banks were robbed."

(4) That "there would appear to be a wealth of contrary information that could have been presented if it existed."

Jocko's argument, however, is based on a strained interpretation of these remarks, removed from their context. As we review the record, we see that the district court made these statements in response to arguments that Jocko himself raised. The court did not impermissibly shift the burden of proof to Jocko; rather, the court determined that the evidence presented by the government sufficiently supported a finding that it was more likely than not that Jocko committed the March 12 robbery. First, the court summarized all the evidence of Jocko's participation, including the cell-phone location data, the proximity of the banks, the similarities among the images from the three surveillance videos, and the gun-shaped lighter in the jacket pocket. The court then discussed the shortcomings of the government's evidence, such as the lack of testing for fingerprints or DNA. Next, the court explained that there was no contrary evidence or testimony for it to consider. Weighing both sides, the court concluded that Jocko had committed the other robbery.

By pointing out that Jocko had not presented any contrary evidence, the court was not shifting the burden of proof (or production) but remarking that, because only the government proffered evidence, all the court could do was assess whether that evidence met the preponderance standard. The court was also making clear that Jocko had a reasonable opportunity—with an investigator's assistance—to dispute the government's evidence and had not done so. *See, e.g., United States v. McGill*, 32 F.3d 1138, 1145–46 (7th Cir. 1994) (remarking on defendant's power of subpoena and ability to call witnesses to undermine government's evidence at sentencing hearing).

Moreover, it is important to consider how the court's statements respond to Jocko's arguments. In writing, Jocko had asserted that there is "no way of knowing" from the cell-phone location data whether Jocko had friends or relatives in the vicinity of the banks or drove through that area to get to work. At the hearing, Jocko's counsel asserted Jocko *did* have friends and relatives that lived near the banks and that he traveled in that area "virtually every single day." But these assertions were not backed by affidavits, work schedules, or any other evidence. Therefore, the court's comments also served as an appropriate reminder that it could not credit unsubstantiated statements by Jocko's counsel. *See, e.g., United States v. Sensmeier*, 361 F.3d 982, 989 (7th Cir. 2004) ("[W]holly unsubstantiated statements are not enough to undermine, nor even question, the court's acceptance of the government's proof.") Nor could Jocko claim he was unable to back up these statements; if he did not wish to testify, he still had the power of subpoena and a court-appointed investigator. Jocko's legal argument, therefore, lacks merit.

Even if that legal argument succeeded, though, Jocko misapprehends what he would gain from this appeal. Because he does not argue that, apart from the alleged procedural error, there was insufficient evidence to sustain a finding that Jocko robbed BMO Harris on March 12, there would be no need for another evidentiary hearing. Jocko already had his chance to present evidence before the district court, and he has not argued that, on its own, the government's evidence does not support the enhancement. Without cause to revisit its factual finding, the district court could simply enter the same sentence. Indeed, the judge's remark at the evidentiary hearing—that his finding would be the same even without considering the lack of an alibi or absence of contrary evidence— suggests this is precisely what would happen. But we need not speculate, because there was no procedural error here.

AFFIRMED