**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Richard Blake DRAPER, Defendant–Appellant.**

Nos. 92–30088, 92–30111.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1993.

Decided June 22, 1993.

Ellen C. Pitcher, Asst. Federal Public Defender, Portland, OR, for defendant-appellant.

Kent S. Robinson, Asst. U.S. Atty., Portland, OR,. for plaintiff-appellee.

Before: TANG, POOLE, and RYMER, Circuit Judges.

TANG, Circuit Judge:

Richard Blake Draper appeals sentences imposed following his guilty pleas to an indictment and an information, each charging a separate count of unarmed bank robbery, in violation of 18 U.S.C. § 2113(a). Draper contends the district court erred in adjusting his offense level upward for obstruction of justice pursuant to U.S.S.G. § 3C1.1. We affirm.

I.

In July 1991, Draper was charged with bank robbery in a one count indictment to which he pleaded guilty. Sentencing was scheduled for November 25. In the meantime, the district court permitted Draper to remain at large, subject to the conditions of his pretrial release. These conditions required, among other things, that Draper "[r]eside at a community treatment center."

Shortly after Draper pleaded guilty, the government sought a warrant for his arrest when he failed to return to his assigned treatment center. The district court issued the requested warrant, and Draper was arrested approximately two weeks later. In the interim, he robbed another bank. With this complication, Draper requested and received a continuance of the November 25 sentencing. He was then charged for, and pleaded guilty to, the second bank robbery.

The two bank robbery convictions were consolidated for sentencing. In calculating Draper's offense level under the Sentencing Guidelines for the first bank robbery, the presentence report recommended a two-point upward adjustment "since the defendant has willfully obstructed or impeded the administration of justice by escaping from custody before sentencing ..., pursuant to Guideline 3C1.1 (App. Note 3(e))."

Draper objected to this recommendation on the ground that he was not in custody when he failed to return to his assigned residence. In response, the probation office noted that, because Draper appeared eligible to receive credit toward his sentence for time served at the community treatment center, "it would appear that the defendant's stay at CCRC is a form of custody and he obstructed justice when he escaped from this confinement while awaiting sentencing."

At sentencing, Draper also argued that the obstruction of justice guideline does not expressly apply to violations of pre-trial release conditions. The government responded that "Guideline section 3C1.1 is there ... for the court to take into account any sort of obstructive conduct on the part of the defendant." The government also asserted that, but for Draper's rearrest, he would not have appeared for sentencing. Draper countered that "it's [not] clear that [he] would not have appeared at sentencing."

The district court ruled "that defendant obstructed justice because he violated the conditions of his release from the community corrections center by failing to report to the corrections center, thereby impeding the administration of justice." The court imposed, and Draper timely appeals, two concurrent 87–month sentences.[1]

## II.

### A.

Draper was sentenced February 24, 1992. Accordingly, the November 1, 1991 version of the Sentencing Guidelines applies. *See United States v. Mooneyham*, 938 F.2d 139, 140

(9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 443, 116 L.Ed.2d 461 (1991). We "review de novo whether a defendant's conduct constitutes obstruction of justice under U.S.S.G. § 3C1.1." *United States v. Morales,* 977 F.2d 1330, 1331 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1399, 122 L.Ed.2d 772 (1993). Underlying factual findings are reviewed for clear error. *Id.* at 1330–31.

### B.

The relevant version of Guidelines section 3C1.1 provides that, "[i]f the defendant *willfully* obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, [then] increase the offense level by 2 levels." (Emphasis added.) The guideline's *mens rea* element "requires that the defendant 'consciously act with the *purpose* of obstructing justice.'" *United States v. Lofton,* 905 F.2d 1315, 1317 (9th Cir.) (quoting *United States v. Stroud,* 893 F.2d 504, 507 (2d Cir.1990)), *cert. denied,* 498 U.S. 948, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990).

In interpreting and applying a sentencing guideline, "courts should always consider the [accompanying] commentary, regardless of how clear the guideline may appear on its face." *United States v. Anderson,* 942 F.2d 606, 612 (9th Cir.1991) (en banc). The commentary to Guidelines section 3C1.1 notes that "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness." U.S.S.G. § 3C1.1, comment. (n. 2). Yet the commentary also recognizes that not all obstructive conduct warrants an upward adjustment in offense level. Some conduct should instead "be sanctioned by the determination of the particular sentence within the otherwise applicable guideline range." *Id.*

▇▇▇ The commentary provides a "non-exhaustive list of examples of the types of conduct to which this enhancement applies." *Id.* comment. (n. 3). This list includes "escaping or attempting to escape from custody before trial or sentencing; or willfully failing

---

**1.** The parties do not dispute, and we find no reason to question, that the obstruction of justice adjustment affects Draper's sentence in both cases.

to appear, as ordered, for a judicial proceeding." *Id.* This language also indicates that it is enough that a defendant escape; she or he need not also miss a "judicial proceeding" before the guideline applies. *See also Morales,* 977 F.2d at 1331 ("Whether justice is actually obstructed or impeded is irrelevant to the application of this section.").

■ On the other hand, the commentary indicates that "avoiding or fleeing from arrest" is an example "of the types of conduct that ... do not warrant application of this enhancement," but can be sanctioned in the choice of a sentence within the otherwise applicable guideline range. U.S.S.G. § 3C1.1 comment. (n. 4). Whether conduct amounts to an obstruction of justice should be determined with reference to the commentary's examples of included and excluded conduct. *Id.* comment. (n. 2).

### C.

We confronted the dichotomy between escaping from custody and fleeing arrest in *United States v. Mondello,* 927 F.2d 1463 (9th Cir.1991). In that case, we upheld an obstruction adjustment where the defendant was released from detention before his luggage could be searched. When marijuana was found in the bags, authorities contacted Mondello's attorney, who unsuccessfully tried to arrange for the defendant's surrender. After eluding authorities for two weeks, Mondello was spotted driving on a freeway. He fled from his car and was arrested after a forty minute chase. *Id.* at 1465.

In upholding the obstruction adjustment, we observed that

Mondello's flight did not occur in the immediate aftermath of his crime. The crime had taken place three weeks before. Mondello had already been arrested for the offense and told he was a suspect in a criminal case. This is far from the situation where, for example, a criminal is surprised in the act of committing a crime and makes an evasive dodge to avoid apprehension. . . . [4]

---

[4] . . . As stated above, we are not dealing with a simple flight from arrest. Mondello had already been arrested for his offense and was

expected to surrender himself. Instead, he decided to hide out for two weeks and then [to] engage in a forty minute ruse to avoid capture. We decline to adopt a cramped reading of note 4(d) [which excludes mere avoidance of arrest from obstruction of justice guideline] that would ignore the realities of this case, where there was an attempt to escape justice and not just the scene of a crime.

*Mondello,* 927 F.2d at 1466–67 & n. 4.

By contrast, we held that it was error to apply an obstruction adjustment under the facts in *United States v. Madera–Gallegos,* 945 F.2d 264 (9th Cir.1991). In that case, the defendants apparently suspected that something had gone awry with their drug transactions and fled their home minutes before authorities arrived to arrest them. *Id.* at 265–66. Police then spent 200 hours over the next nine months searching for the defendants. *Id.* at 266. Defendants admitted they knew they were wanted. *Id.* Yet in reversing the district court's application of the obstruction guideline, we distinguished *Mondello:*

Mondello was arrested, knew that he was expected to turn himself in, and then "played a cat-and-mouse game of avoiding the authorities." Here the Gallegos were not arrested and fled to Mexico immediately after the drug deal turned sour. There is no evidence that, once found, they made any efforts to impede authorities.

945 F.2d at 268 (citation omitted). The events thus amounted only to "avoiding or fleeing from arrest," despite the nine-month period in which defendants knowingly remained at large. *Id.; accord United States v. Sanchez,* 928 F.2d 1450, 1458–59 (6th Cir. 1991) (reversing obstruction adjustment where defendants had no obligation to remain at their residence after their coconspirator had been arrested).

■ As these cases suggest, a narrow or technical reading of the term "custody" is not appropriate in deciding whether an "escap[e] or attempt[ ] to escape from custody before trial or sentencing" warrants an upward adjustment in offense level. Instead, for purposes of the obstruction guideline, "custody" need only involve some degree of official control over a defendant such that a subsequent evasion amounts to more than mere

"avoiding or fleeing from arrest." Stated differently, the defendant must have been submitted, willfully or otherwise, to the due process of law before the obstruction adjustment can obtain.

## D.

■ The present case is easily distinguished from *Madera–Gallegos;* indeed, it represents a clearer obstruction of justice than in *Mondello.* Draper not only had been arrested, but his escape came after he agreed to conditions of release specified by the district court. Regardless of whether he escaped from "custody" in any technical sense of the word, Draper undoubtedly "attempt[ed] to escape justice" after having been submitted to process. *Mondello,* 927 F.2d at 1467 n. 4. Draper's act was more than "avoiding or fleeing from arrest" because, as in *Mondello,* Draper had already been "arrested for his offense and was expected to surrender himself." *Id.* Instead of returning to the community corrections center, he remained at large for about two weeks, the same as the defendant in *Mondello.* Thus, our decision in *Mondello* controls this case.

Draper argues that a two week absence is not sufficient to warrant the obstruction adjustment. He distinguishes his position from *United States v. Perry,* 908 F.2d 56 (6th Cir.), *cert. denied,* 498 U.S. 1002, 111 S.Ct. 565, 112 L.Ed.2d 571 (1990), where the defendant received an obstruction adjustment after remaining at large for eight months. We reject this argument; a two week absence is more than enough. *Mondello,* 927 F.2d at 1466–67; *see also United States v.*

*George,* 911 F.2d 1028, 1030 (5th Cir.1990) (affirming upward departure for obstruction of justice where "authorities quickly apprehended" defendant).[2] The Sixth Circuit's *Perry* decision thus supports application of the obstruction adjustment here, as does the common interpretation of our decision in *United States v. Avila,* 905 F.2d 295 (9th Cir.1990).[3]

■ Draper further contends that, because his release violation did not have a significant impact on trial or sentencing proceedings, it should not be viewed as an obstruction of justice. However, Draper overlooks the fact that his sentencing, originally scheduled for November 25, 1991, was postponed due in part to the release violation. Furthermore, for purposes of the obstruction adjustment, it is irrelevant whether justice is actually obstructed or impeded. *Morales,* 977 F.2d at 1331. It is sufficient that the conduct in question has the potential for obstructing the investigation, prosecution, or sentencing of the instant offense. *See United States v. Baker,* 894 F.2d 1083, 1084 (9th Cir.1990).[4]

■ For the foregoing reasons, we now make explicit what we suggested in *Avila:* Absconding from pretrial release merits an upward adjustment pursuant to Guidelines section 3C1.1. We add, however, that the obstruction adjustment is not appropriate simply because a defendant violated some condition of his or her release. As previously mentioned, some conduct is better taken into account simply by choosing a sentence within the otherwise applicable guideline range.

---

2. Indeed, Guidelines section 3C1.1 and its accompanying commentary indicate that a simple *attempt* to escape is sufficient to warrant the obstruction adjustment. *See* U.S.S.G. § 3C1.1 & comment (n. 3(e)); *see also, e.g., United States v. Keats,* 937 F.2d 58, 67–68 (2d Cir.) (affirming obstruction adjustment where evidence indicated that defendant was about to leave country prior to trial), *cert. denied,* —— U.S. ——, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991).

3. Several courts have read *Avila* as holding that "absconding from pretrial release [is an] obstruction[ ] of justice." *E.g., United States v. Valdiosera–Godinez,* 932 F.2d 1093, 1100 (5th Cir.1991). However, these interpretations overlook the

point that *Avila* did not rule on whether the release violation merited an obstruction adjustment. *See Avila,* 905 F.2d at 297.

4. We have no doubt that absconding from pretrial release potentially obstructs or impedes the administration of justice. In this case, the government points to additional work by the Pretrial Services office, the district court, and law enforcement agents necessitated by Draper's violation of his release conditions. *Cf. George,* 911 F.2d at 1030–31 (affirming upward departure from Guidelines range under similar circumstances and noting "significant disruption" caused by absconding from release conditions).

Finally, we reject Draper's contention, asserted at oral argument, that in leaving the community treatment center he was merely attempting to escape intolerable conditions. Without ruling on the viability of a necessity-type defense, we find the district court did not clearly err in concluding that Draper intended to obstruct justice and therefore possessed the mental state required under Guidelines section 3C1.1.

### III.

Because absconding from pretrial release amounts to escape from custody under the Sentencing Guidelines, the district court did not err in imposing an obstruction adjustment in this case.

**AFFIRMED.**