53 F.3d 340
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Gabriel LOPEZ-ROBLES, Defendant-Appellant.
 No. 94-10194.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 19, 1995.*
Decided April 27, 1995.
 
 Before: BROWNING, SNEED, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Gabriel Lopez-Robles appeals his 78-month sentence imposed following entry of a guilty plea to possessing marijuana with intent to distribute. Lopez-Robles challenges (a) the weight of the marijuana, (b) the firearm adjustment, (c) the denial of a mitigating role adjustment, (d) the obstruction of justice adjustment, (e) the disparity of his sentence, and (f) the denial of a downward departure. We have jurisdiction under 28 U.S.C. Sec. 1291. We vacate the sentence and remand for resentencing.
 
 
 3
 We review the factual findings underlying a sentence for clear error. United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir.1994) (per curiam).
 
 
 4
 Lopez-Robles was arrested with two other men, David Jagoda and Jose Teran-Rosendo, as they unloaded marijuana from a station wagon into Teran-Rosendo's house. Although agents had been investigating the smuggling organization for several months, they had not seen Lopez-Robles prior to the day of his arrest. Agents found a .38 caliber Colt Mustang pistol in the garage.
 
 
 5
 Following his arraignment on a twelve-count indictment, Lopez-Robles was released on bond. Two months later, a bench warrant issued when Lopez-Robles failed to report to pretrial services and his wife relayed that he had gone to Mexico.
 
 
 6
 The following year, Lopez-Robles was arrested and entered a guilty plea to one count of possession with intent to distribute.
 
 A. Weight of the Marijuana
 
 7
 Lopez-Robles argues that the district court used unreliable evidence to determine that the marijuana found in the garage weighed 230 pounds instead of 200 pounds as predicted in the search warrant affidavit. Lopez-Robles contends that the plastic wrappings account for the additional 30 pounds.
 
 
 8
 At the time of the seizure, agents used a calibrated scale to measure the marijuana and determined that it weighed 230 pounds. The district court was justified in relying on this reliable evidence. See United States v. Upshaw, 918 F.2d 789, 790 (9th Cir.1990) (district court must use reliable information to determine quantity of drugs), cert. denied, 499 U.S. 930 (1991). The actual weight was more reliable than the predicted weight set forth in the search warrant affidavit.
 
 
 9
 Lopez-Robles correctly notes that packaging material should not be used in calculating the weight for the base offense level because it is not a drug product. United States v. Robins, 967 F.2d 1387, 1389 (9th Cir.1992). But we reject Lopez-Robles' unsupported speculation that the wrappings weighed 30 pounds. Cf. United States v. Robinson, 35 F.3d 442, 449-50 (9th Cir.1994) (government showed amount of marijuana by preponderance of evidence even though it lost a number of plants before the sentencing), cert. denied, 115 S.Ct. 1268 (1995).
 
 B. Possession of Firearm Adjustment
 
 10
 We reject Lopez-Robles's argument that the written plea agreement precluded the government from adjusting his offense level for possession of a firearm. The government promised to dismiss the remaining counts and not to prosecute the bail jumping, but made no promise as to the sentence. The promise to dismiss the substantive firearm count did not preclude the imposition of this adjustment. See United States v. Flores-Payon, 942 F.2d 556, 561 (9th Cir.1991).
 
 
 11
 We agree that the adjustment was improper, however, because there was insufficient evidence to establish Lopez-Robles' constructive possession of the firearm.
 
 
 12
 The presentence report recommended that the adjustment apply because the loaded weapon was "in the vicinity of the marijuana in the garage" and "was readily accessible to the three defendants arrested at the residence." The report conceded that "it is not known whose weapon this was." Nonetheless, the report concluded that "the weapon did not necessarily have to be 'possessed,' but merely had to present during the offense."
 
 
 13
 Although the government had placed fluorescent material on the marijuana, which showed up on Lopez-Robles' hands, the material was not found on the gun. Lopez-Robles did not own or live at the house where the gun was found.
 
 
 14
 There was a dispute about the location of the gun: one agent said that it was clearly visible on a shelf but the police reports stated that it was behind or under a box of toys. Without conducting an evidentiary hearing, the district court found that the firearm was at eye level and visible.
 
 
 15
 Section 2D1.1(b)(1) of the 1992 Sentencing Guidelines provides for a two level increase in the offense level if a dangerous weapon was "possessed" during an offense involving drugs. The Commentary states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. Sec. 2D1.1, comment. (n. 3). This Commentary creates a nexus requirement between the drugs and the gun. United States v. Gillock, 886 F.2d 220, 222-23 & n. 1 (9th Cir.1989).
 
 
 16
 It is not enough that the weapon merely be present; rather, the defendant must have actual or constructive possession of the weapon. United States v. Kelso, 942 F.2d 680, 681 (9th Cir.1991); United States v. Stewart, 926 F.2d 899, 900 (9th Cir.1991). Constructive possession "is not the same as merely knowing the weapon is nearby. The circumstances of each case must be examined to determine if there is such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession." Kelso, 942 F.2d at 682 (quoting United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990)) (quotations and footnote omitted).
 
 
 17
 In this case, the gun was in the same room as the marijuana, which establishes the necessary nexus between the gun and drugs. See id.
 
 
 18
 The district court's factual finding that the gun was in plain view makes it likely that Lopez-Robles was aware that the gun was in the garage. The inference is weak, however, given the conflicting official reports about the location of the gun. See id. (no evidence that passenger was aware of gun located behind driver's seat of car).
 
 
 19
 More importantly, there is no evidence showing that Lopez-Robles had dominion and control over the weapon. There must be more than pure speculation to connect the defendant to the gun. Terry, 911 F.2d at 278. Lopez-Robles was hired to unload marijuana on one occasion in a large smuggling operation, he did not live in the house where the marijuana was unloaded, he did not touch the gun, and he did not attempt to take it with him as he fled from arresting officers. Therefore, the district court committed clear error by finding that Lopez-Robles possessed the weapon for purpose of Sec. 2D1.1(b)(1). See Kelso, 942 F.2d at 682 (reversing gun adjustment because no evidence that defendant owned gun or even aware of its presence behind the driver's seat of car, even though he may have had access to it and had used guns in prior crimes); cf. United States v. Ramos-Rascon, 8 F.3d 704, 711-12 (9th Cir.1993) (collecting cases in which government failed to show the dominion and control necessary to convict on a theory of constructive possession).[1]
 
 C. Mitigating Role Adjustment
 
 20
 Lopez-Robles contends that the district court should have awarded him a minimal or minor role adjustment. Lopez-Robles characterizes himself as a courier because he was recruited for a single smuggling transaction.
 
 
 21
 In deciding whether a defendant was a minimal or minor participant, the sentencing court compares the defendant's culpability to the conduct of the other participants. United States v. Benitez, 34 F.3d 1489, 1498 (9th Cir.1994), cert. denied, 115 S.Ct. 1268 (1995). Here, the district court concluded that Lopez-Robles' culpability was equal to Jagoda and Teran-Rosendo, who also unloaded the marijuana. Because that finding is not clearly erroneous, the district court properly denied the adjustment. See id. Because Lopez-Robles knew he was transporting marijuana and expected to be paid $300, he is not entitled to the adjustment as a mere courier. See United States v. Davis, 36 F.3d 1424, 1436-37 (9th Cir.1994), cert. denied, 115 S.Ct. 1147 (1995).
 
 D. Obstruction of Justice Adjustment
 
 22
 The district court enhanced Lopez-Robles' offense level by two because his flight following arraignment constituted an obstruction of justice. Lopez-Robles argues this was error because the government did not show that his flight hindered the prosecution. Lopez-Robles explains that he returned to Mexico to live with his mother because he had lost his leg in an accident and had no means of financial support.
 
 
 23
 We reject the argument. Lopez-Robles fled after he had been arrested and after he had agreed to the conditions of release specified by the district court, including that he remain in Arizona. See United States v. Draper, 996 F.2d 982, 986 (9th Cir.1993). He remained at large for over a year. See id. (two week absence enough). Absconding from pretrial release has the potential to obstruct the investigation, prosecution, and sentencing for the offense, as well as actually impeding the administration of justice by creating more work for law enforcement agencies. See id. at 986 & n. 4 (sufficient for conduct to have potential to obstruct justice). The district court correctly rejected Lopez-Robles' excuse for fleeing. See id. at 987 (rejecting defendant's contention that he absconded from community treatment center to escape intolerable conditions).
 
 E. Disparate Sentences
 
 24
 Lopez-Robles argues that his sentence, 78 months, is disparate from that of Jagoda and Teran-Rosendo, who entered guilty pleas to the same charge as Lopez-Robles. Jagoda and Teran-Rosendo cooperated with the government and negotiated plea agreements with sentencing caps. They received sentences of 60 months on probation and 36 months in custody.
 
 
 25
 Lopez-Robles misstates the record when he asserts that Jagoda and Teran-Rosendo did not receive the gun adjustment. The presentence reports reflect that both were slated to receive the adjustment; however, it was academic because their plea agreements contained sentencing caps. In addition, the presentence reports used the same marijuana weight for these three men.
 
 
 26
 The fact that the other two men cooperated with the government and thereby obtained downward departures does not mean that Lopez-Robles' sentence was incorrectly calculated. The district court arrived at Lopez-Robles' sentence by applying Guidelines principles, therefore, his disparity claim fails. E.g., United States v. Shabani, No. 91-30224, slip op. 3487, 3494-95 (9th Cir. Mar. 30, 1995) (rejecting disparity argument when co-defendants had cooperated with government to secure lower sentences); United States v. Taylor, 991 F.2d 533, 536 (9th Cir.) (rejecting disparate sentencing claim by defendant who properly received a sentencing adjustment that a co-defendant's plea agreement precluded), cert. denied, 114 S.Ct. 170 (1993).
 
 F. Downward Departure
 
 27
 Lopez-Robles contends that he qualifies for a downward departure because he substantially assisted the government. Apparently, the government interviewed him but declined to move for a departure after he fled. Because the government did not make the requisite motion to depart and because Lopez-Robles has not alleged or shown bad faith by the government, we reject this argument. See United States v. Shrewsberry, 980 F.2d 1296, 1297 (9th Cir.1992) (per curiam), cert. denied, 114 S.Ct. 120 (1993).
 
 
 28
 He further contends that a downward departure was appropriate based upon sympathetic offender characteristics, such as his missing leg, stable work history, legal permanent resident status, close family ties, and economic straits. Even assuming that Lopez-Robles properly preserved this issue for appeal, it fails. The district court based its decision to impose a sentence at the low end of the guideline range on some of these factors and the discretionary refusal to depart is not reviewable. See id. at 1298.
 
 
 29
 VACATED AND REMANDED FOR RESENTENCING.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The firearm adjustment may apply if the defendant agreed to engage in joint conduct and could reasonably foresee another defendant's possession of the firearm. See Stewart, 926 F.2d at 900. Because the district court did not make the necessary findings--whether one of the other men in the garage "possessed" the gun and whether Lopez-Robles could reasonably foresee it--we express no opinion on this alternative theory