110 F.3d 70
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony Utah-Zona BECK, Defendant-Appellant.
 No. 96-30189.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 7, 1997.*
Decided April 1, 1997.
 
 Before: FLETCHER and TASHIMA, Circuit Judges, and SCHWARZER,** District Judge.
 MEMORANDUM***
 Anthony Utah-Zona Beck appeals his sentence for unarmed bank robbery. Beck argues that the district court erred in applying a two-point enhancement for obstruction of justice. We review for clear error the district court's factual findings in the sentencing phase. See United States v. Morales, 977 F.2d 1330, 1330-31 (9th Cir.1992), cert. denied, 507 U.S. 966 (1993). We review de novo whether Beck's conduct amounted to an obstruction of justice under U.S.S.G. § 3C1.1. See United States v. Benitez, 34 F.3d 1489, 1497 (9th Cir.1994), cert. denied, 115 S.Ct. 1268 (1995); Morales, 977 F.2d at 1331. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.
 I. FACTS
 On November 9, 1995, Beck robbed a bank in Woodburn, Oregon. FBI Agent Donald McMullen, having identified Beck as a suspect, went with two other agents to the Texaco station at which Beck's wife worked. McMullen entered the station and bought a cup of coffee. He saw Beck in the station, went outside to tell the other agents that Beck was there, and then re-entered the station to attempt to question Beck.
 McMullen approached Beck from behind and said "Tony" or "Tony Beck." McMullen may have touched Beck. McMullen testified that he then said, "I'm Don McMullen of the FBI." Beck testified that he did not realize at that time that McMullen was an FBI agent. Beck then swung his arm around, hitting McMullen in the face and causing the coffee to splash all over McMullen and the store. Beck turned and tried to exit the store. McMullen grabbed him by both elbows. Beck pushed through the door, with McMullen in tow, and was finally pushed to the ground and subdued by all three federal agents. The entire struggle took approximately one minute.
 McMullen then arrested Beck for assaulting a federal officer. While conducting a search of Beck's person incident to that arrest, McMullen found a wad of bills in Beck's pants pocket. McMullen told Beck that he had been trying to talk to Beck about a bank robbery.
 Agent Walker then placed Beck in McMullen's FBI car. Walker tried to secure Beck with a seatbelt, but could not locate the inside part of the belt. Walker went around to the other side of the car, but could not open it because the child-safety lock was engaged. McMullen walked around to disengage the safety lock. Beck took advantage of this situation by jumping out of the car and running away. The agents ran after Beck and caught him some 100 to 150 yards from the car.
 On February 12, 1996, Beck pled guilty to one count of unarmed bank robbery in violation of 18 U.S.C. § 2113(a). The district court dismissed charges against Beck for assaulting a federal agent and attempted escape.
 In determining Beck's sentence, the district court rejected Beck's sentencing motions and objections to the presentence report. The court acknowledged the objections of both the government and Beck to the probation officer's recommended three-point enhancement for a federal-agent victim and instead applied a two-point enhancement for obstruction of justice. On June 4, 1996, the court sentenced Beck to 60 months in prison.
 II. DISCUSSION
 Beck argues that his conduct, whether in struggling with the agents before they arrested him or in running away from the agents' car, does not fall within the scope of the obstruction of justice enhancement under U.S.S.G. § 3C1.1.[1]
 Application Note 3 to § 3C1.1 provides "a non-exhaustive list of examples of the types of conduct to which" the enhancement applies. Included in this list is "escaping or attempting to escape from custody before trial...." U.S.S.G. § 3C1.1, Application Note 3(e). In contrast, Application Note 4(d) explains that "avoiding or fleeing from arrest" does not warrant application of the § 3C1.1 enhancement. Whether Beck's conduct constituted obstruction of justice under § 3C1.1 therefore depends on whether it was willfully "attempting to escape from custody" as opposed to instinctively "avoiding or fleeing from arrest."
 After carefully reviewing the record, we find that Beck's entire course of conduct leading up to and immediately following his arrest was deliberately aimed at frustrating the FBI agents' efforts to question him about the bank robbery. Beck apparently struck McMullen and tried to leave the station after McMullen tried to speak with him, perhaps even before he realized McMullen was a federal agent. He continued to struggle for at least a few moments after he realized McMullen was with the FBI, then attempted to escape after the agents arrested him for assaulting McMullen and told him they were investigating a bank robbery. By this series of actions, Beck "willfully ... attempted to obstruct or impede, the administration of justice during the investigation" of the bank robbery. U.S.S.G. § 3C1.1.
 
 
 1
 Beck relies on United States v. Stroud, 893 F.2d 504 (2d Cir.1990) for the proposition that "mere flight in the aftermath of a crime, without more, is insufficient to justify a section 3C1.1 obstruction of justice enhancement." Id. at 507. However, Beck's flight from the agents' car occurred several hours after the bank robbery and after Beck had been apprehended and arrested, not in the immediate aftermath of the robbery. In fact, the Second Circuit in Stroud distinguished the defendant's flight, to which it held the enhancement inapplicable, from "a deliberate pre- or post-arrest attempt to frustrate or impede an ongoing criminal investigation, such as in the case of an individual who flees while being sought for questioning some time after the commission of a crime." 893 F.2d at 508.
 
 
 2
 Moreover, even if Beck was "avoiding or fleeing from arrest" when he struck McMullen and struggled with the three agents, his attempted escape after his arrest certainly warranted application of the enhancement. Once Beck was arrested, handcuffed, read his Miranda warnings, and escorted to the agents' car for transportation to the Marion County Jail, he was in "custody." See United States v. Draper, 996 F.2d 982, 985-86 (9th Cir.1993) (" '[C]ustody' need only involve some degree of official control over a defendant such that subsequent evasion amounts to more than mere 'avoiding or fleeing from arrest.' "). Beck did not simply avoid apprehension by police in the immediate aftermath of a crime; after being apprehended and placed in custody, he took advantage of a momentary lapse in the agents' supervision to jump from the vehicle and run away. This was an attempt to escape from custody, to which the district court properly applied § 3C1.1.
 
 
 3
 In Draper, we examined the distinction between avoiding or resisting arrest on the one hand and escaping from custody on the other. Draper, 996 F.2d at 985. Draper had been arrested and was expected to surrender. Prior to sentencing, he absconded from pretrial release. We held that "custody" should be construed broadly and that § 3C1.1 applied to Draper's pretrial escape. Id. at 985-86.
 
 
 4
 Beck argues that his conduct did not rise to the level of that to which we upheld a § 3C1.1 enhancement in United States v. Mondello, 927 F.2d 1463 (9th Cir.1991). Mondello evaded the authorities for two weeks and then led federal officers on a forty-minute chase before he ultimately was apprehended. We upheld the application of § 3C1.1 to his sentence, finding his conduct "far from the situation where ... a criminal is surprised in the act of committing a crime and makes an evasive dodge to avoid apprehension." Id. at 1466-67.
 
 
 5
 Beck's flight did not involve a high-speed chase of substantial distance or duration. However, § 3C1.1 applies to situations in which the administration of justice is obstructed or impeded, not to situations where the defendant's flight endangers the lives of the pursuing agents. The latter is covered by U.S.S.G. § 3C1.2. That Beck's flight did not expose him to a § 3C1.2 enhancement or involve a lengthy and long-lasting chase does not negate the fact that Beck was "attempting to escape justice and not just the scene of a crime." Mondello, 927 F.2d at 1467 n. 4.[2] Moreover, "[f]or purposes of the obstruction adjustment, it is irrelevant whether justice is actually obstructed or impeded. It is sufficient that the conduct in question has the potential for obstructing the investigation, prosecution, or sentencing of the instant offense." Draper, 996 F.2d at 986 (citations omitted). Beck's attempt to escape exposed him to a § 3C1.1 enhancement regardless of whether that attempt succeeded.
 
 
 6
 Finally, Beck's flight from the car was "willful" as required under § 3C1.1. A defendant may not have his sentence enhanced for obstruction of justice unless he acted willfully. Mondello, 927 F.2d at 1466. Beck testified that he panicked and ran from the car and that when he "came to [his] senses" and realized he was handcuffed, he dropped to the ground. However, at the time Beck fled the car he knew he was going to jail and that he was a bank robbery suspect. Agent McMullen testified that when he went around to help Agent Walker open the door, Beck "jumped out of the car and ran down through some grassy area towards ... [Oregon] Route 22 and then turned right ... towards I-5." The district court expressly found that Beck "willfully interfer[ed] with the administration of justice." That finding was not clearly erroneous.[3]
 
 
 7
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 * This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 3C1.1 provides:
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 [2]
 We note that both Stroud and Mondello were decided under the former version of Application Notes 3 and 4 to § 3C1.1, which did not include reference to escape or flight
 
 
 [3]
 In United States v. Gardner, 988 F.2d 82, 83 (9th Cir.1993), the district court had applied a § 3C1.1 enhancement without determining whether the defendant, who may have been under the influence of drugs or alcohol at the relevant time, had intended to obstruct justice. We reversed, but stated that "[a]lthough a § 3C1.1 enhancement must be premised on willful conduct that has the purpose of obstructing justice, the district court need not specify the reasons for its factual finding of obstruction of justice." Id