**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-30092 |
| Plaintiff - Appellee, | D.C. No. 4:12-cr-00081-SEH-1 |
| v. | |
| JUNE LEE WOLVERINE, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted May 13, 2014
Seattle, Washington

Before: O'SCANNLAIN, BERZON, and TALLMAN, Circuit Judges.

Defendant-Appellant June Lee Wolverine challenges her jury convictions

under 18 U.S.C. § 1153(a) (offense committed within Indian country) for assault

resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6) and assault

with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3). She also

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

challenges her concurrent sentences of 78 months imprisonment followed by 3 years of supervised release.

First, Wolverine contends that her conviction was obtained using impermissible character evidence because the district court improperly admitted testimony regarding an incident nine months earlier where she stabbed the same victim, her boyfriend, Nate Tatsey, in the chest. Wolverine alleges that evidence of this incident was too dissimilar from the charged conduct to be admissible under Federal Rule of Evidence 404(b) and was more prejudicial than probative. We review the district court's admission of character evidence for abuse of discretion. *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994).

"When the Government offers evidence of prior or subsequent crimes or bad acts as part of its case-in-chief, it has the burden of first establishing relevance of the evidence to prove a fact within one of the exceptions to the general exclusionary rule of Rule 404(b)." *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1108 (9th Cir. 1979); *see also United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002). If offered for a proper purpose, the district court may admit the evidence if it (1) is material; (2) is similar to the charged conduct; (3) has a sufficient basis to support a finding that the defendant committed the other act; and (4) is not too remote in time. *United States v. Arambula-Ruiz*, 987 F.2d 599, 602

(9th Cir. 1993). The probative value must also outweigh any prejudice. *Romero*, 282 F.3d at 688; *see also* Fed. R. Evid. 403.

Here, the prior stabbing satisfies all of these prerequisites. At trial Wolverine represented that she had brandished the knife to protect herself, but did not intend to stab Tatsey and had done so accidentally. So the prior stabbing, and Wolverine's contemporaneous statements about that stabbing, were relevant to show intent. *See United States v. Bowman*, 720 F.2d 1103, 1105 (9th Cir. 1983) (admitting a defendant's prior conviction for assault where defendant claimed self-defense in a different factual context). The prior stabbing was also nearly identical to the charged conduct save for the extent of the injury to Tatsey; it involved the same actors and the same act of violence. *United States v. Sinn*, 622 F.2d 415, 416 (9th Cir. 1980) (upholding admission of prior bad act evidence where the prior offense involved nearly identical facts). Moreover, any prejudice was mitigated by the limiting jury instruction provided by the district court. *United States v. Montgomery*, 150 F.3d 983, 1001 (9th Cir. 1998) (noting that an appropriate limiting instruction is a factor weighing in favor of admission).

Second, Wolverine contends that the district court violated her constitutional right to present a complete defense by restricting her daughter's attempt to testify that Tatsey had previously enlisted his sisters to assault Wolverine in retaliation for

3

reporting past abuse to tribal law enforcement. But even if error occurred,[1] it was harmless beyond a reasonable doubt. *See United States v. Stever*, 603 F.3d 747, 755–57 (9th Cir. 2010). Wolverine presented ample undisputed evidence that Tatsey was both a nasty drunk and a violent and abusive partner. And she explained that she did not press charges against Tatsey because she believed nothing would happen to him if she did. Thus the exclusion of testimony that third-parties, not present during the stabbing, had previously harassed Wolverine at Tatsey's behest was cumulative and harmless beyond a reasonable doubt.

Third, Wolverine contends that the district court erroneously denied her motions for acquittal due to insufficient evidence. The Government presented sufficient evidence to allow a rational jury to find that Wolverine did not stab Tatsey in self-defense. *See United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Following the stabbing, Tatsey told law enforcement and several neighbors that Wolverine stabbed him in the chest while he was lying down and then stabbed him

---

[1] We are doubtful that the district court erred. Wolverine's case essentially turned on which version of events the jury believed—the version Wolverine and Tatsey presented at trial or the version they had previously described to law enforcement officers. Because the jury did not believe Wolverine's trial testimony about self-defense, the additional tangential evidence proffered would not have mattered.

4

in the buttocks while he was trying to escape. Although Tatsey later testified differently, a reasonable jury could have found his courtroom testimony not credible. Wolverine similarly testified that she acted in self-defense—a story that was contradicted by an audio recording in which Wolverine admitted to the FBI that she stabbed Tatsey in the buttocks as he was running away because she thought he was going next door where his "little woman" lived. A reasonable jury, assisted by evidence that the version of events presented by Wolverine on the stand was physically impossible, could—and did—reject her self-defense argument.

Fourth, the district court properly imposed a two-level obstruction of justice enhancement. We review the district court's interpretation of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Smith*, 719 F.3d 1120, 1123 (9th Cir. 2013).

The obstruction of justice enhancement applies if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the" prosecution of the offense of conviction. U.S. Sentencing Guidelines Manual § 3C1.1. We have held that the plain language of the guidelines only requires a defendant's conduct to have "the potential for obstructing the investigation, prosecution, or sentencing of the instant offense." *United States v. Draper*, 996 F.2d 982, 984–86 (9th Cir. 1993). But regardless of

5

how clear the guidelines may be on their face, we always consider the accompanying commentary. *Id.* at 984. And such commentary is generally authoritative unless it is inconsistent with the guidelines. *United States v. Lambert*, 498 F.3d 963, 966, 971 (9th Cir. 2007) (disregarding the commentary to the degree it is inconsistent with the plain language of the guidelines); *cf. Stinson v. United States*, 508 U.S. 36, 38 (1993) (noting that commentary to the sentencing guidelines is usually authoritative).

The commentary to U.S. Sentencing Guidelines § 3C1.1 states that "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness. . . . [and that it] is not subject to precise definition." U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.3. As a result, the commentary provides "a non-exhaustive list of examples" to "assist the court in determining whether application of this enhancement is warranted in a particular case." *Id.* § 3C1.1 cmt. nn.3 & 4; *see also Draper*, 996 F.2d at 984. This list clarifies that the enhancement applies where a defendant "commit[s], suborn[s], or attempt[s] to suborn perjury" and where a defendant "provide[s] a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." *Id.* § 3C1.1 cmt. n.4(B), (G). But the list also identifies a relevant situation where the enhancement "ordinarily"

6

may not warrant application of the adjustment: where the defendant "mak[es] false statements, not under oath, to law enforcement officers, <u>unless Application Note 4(G) above applies</u>." *Id.* § 3C1.1 cmt. n.5(B) (emphasis added).

Wolverine argues that because the district judge did not explicitly decide whether she lied on the stand at trial or whether she lied to the FBI agent in her recorded statement, he committed procedural error by applying the enhancement. Her argument hangs on the assertion that if she lied only to the FBI agent, application of the enhancement was error because the district judge did not find that her lie obstructed or impeded the investigation and would have clearly erred had he so found. Wolverine is mistaken.

The district judge was not required to make a specific finding as to which example in the non-exhaustive commentary applied. To hold otherwise would make the non-exhaustive list exhaustive and would ignore the commentary's acknowledgment, found in its admission that obstructive conduct has no precise definition, that the judge has some discretion in deciding what is and what is not obstructive conduct.

Even assuming otherwise, to the degree that Application Note 4(G) can be read to preclude application of the obstruction enhancement where a defendant lies to an FBI agent but does not actually obstruct or impede the investigation, that

portion of the commentary is inconsistent with the guideline itself and need not be

followed.[2] *See Lambert,* 498 F.3d at 971; *see also Draper*, 996 F.2d at 986 ("[F]or

purposes of the obstruction adjustment, it is irrelevant whether justice is actually

obstructed or impeded.").  It would be bizarre to require actual obstruction where

the plain text of the guideline requires enhancement for mere attempt.  The

precedent cited by the dissent is unhelpful on this point because it does not address

whether Application Note 4(G) is inconsistent with the Guideline.  *See, e.g.*,

*United States v. Solano-Godines*, 120 F.3d 957, 963–65 (9th Cir. 1997).

---

[2] The dissent seems to argue that Wolverine's conduct is more akin to that described in application note 5(B), which generally excludes from enhancement "false statements, not under oath, to law enforcement officers."  U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.5(B).  But that provision contains an "unless" clause indicating that the general exclusion does not apply where the false statements were material and impeded the investigation.  *See id.* § 3C1.1 cmt. nn.4(G) & 5(B).  "Impeded" is defined as "to interfere with or get in the way of the progress of; to hold up; block; detract from."  Webster's Third New International Dictionary 1132 (1993).  Based on this definition, a lie can certainly impede an investigation without derailing it or "halting" it as the dissent insists.  Moreover, application note 5 states that "if the defendant is convicted of a separate count for [] conduct [generally excluded as not covered by the enhancement]," the exclusion is void and the enhancement applies.  U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.5.  Here, Judge Sam Haddon noted that either act, lying under oath or lying to an FBI agent, could be a crime and he instructed the government to investigate and to provide a "full and written report."  This appears to have been an attempt to cover his bases and ensure that Wolverine would face consequences for what Judge Haddon, an experienced jurist and longtime trial lawyer, declared was the most "blatant . . . contrast in testimony and earlier story" he had ever seen.

8

Furthermore, to adopt the dissent's argument would be to convert the Application Note into a guideline.

In order to support an obstruction of justice enhancement, a district court must only find that (1) the defendant engaged in or attempted to engage in obstructive conduct; (2) the obstructive conduct was material; and (3) "[the] defendant had 'willful intent' to [engage in obstructive conduct]." *See United States v. Jimenez-Ortega*, 472 F.3d 1102, 1103 (9th Cir. 2007) (per curiam).

Viewing the trial judge's comments on the record at trial and at sentencing, we are satisfied the district court properly made these findings. The district judge stated at trial:

> I either have two persons [Wolverine and Tatsey] who have lied under oath in this court, or, by telling a different and conflicting version to an FBI agent, have lied to an FBI agent in the course of his official capacities and duties. Either of which could be a crime. And when this [c]ourt is faced with the unfortunate and, indeed, distasteful reality of recognizing that deliberately false statements have been made that affect a case that is before this [c]ourt, it is impossible to fail to recognize that that sort of activity fundamentally compromises the integrity of our judicial system. And it in turn, at least indirectly, compromises the responsibility of the trier of fact, to be presented with testimony, that is with evidence, that is not tainted by intentional misstatements that get into the trial record under the representations that they are the truth.
>
> As I trust will be obvious to all who are here, this is a matter of grave concern to this [c]ourt. And I say that because, if the integrity of this process cannot be assured, and if the [c]ourt cannot be assured that the

9

integrity of the process will be maintained, we all collectively, who endeavor to administer the fundamentally fair system of judgment, have our responsibilities compromised. As I said, I cannot sort out or resolve this issue, but there are other means by which appropriate steps can be taken.

Later, during sentencing, the judge referenced his earlier colloquy and, after using the word "perjury," he found "ample evidence and justification" to apply the obstruction of justice enhancement to Wolverine. We conclude that taken together, these statements on the record constitute a sufficient finding that Wolverine intentionally engaged in obstructive conduct by making material misstatements of fact. Although the district court could have more artfully stated the bases for its conclusions, *see Jimenez-Ortega*, 472 F.3d at 1103, its findings and observations were sufficient to support the enhancement.

Fifth, Wolverine alleges that the district court committed "both procedural and substantive error" during sentencing by failing to adequately explain its reasons for giving Wolverine a within-range but high-end sentence. As to the procedural error argument, because Wolverine did not object during sentencing, we review for plain error. *United States v. Waknine*, 543 F.3d 546, 551 (9th Cir. 2008). As to the substantive error argument, "whether objected to or not at sentencing . . . [we] review[] for abuse of discretion." *United States v. Autery*, 555 F.3d 864, 871 (9th Cir. 2009). During sentencing, the district court must consider

the 18 U.S.C. § 3553(a) factors, but it is not required to "tick off" each factor. *United States v. Carty*, 520 F.3d 984, 991–92 (9th Cir. 2008). The district court is, however, required to sufficiently explain its reasons for the sentence, but a within-guidelines sentence "ordinarily needs little explanation." *Id.* at 992. Contrary to Wolverine's contentions, the district judge reviewed the pertinent information, heard statements from Wolverine and her counsel, and ultimately imposed the upper-range sentence based on Wolverine's history and characteristics. Specifically, the court noted the seriousness of the crime and the need to protect the public, stating that Wolverine is "dangerous" and capable of inflicting "potentially fatal harm." The district court sufficiently considered the required factors, and imposed a sentence that was not substantively unreasonable.

**AFFIRMED.**

11

**_Judge Berzon's Dissent_**

_United States v. Wolverine_, No. 13-30092

I concur in the majority disposition except with regard to the two-level obstruction of justice enhancement.

To recap: That enhancement applies if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice" with respect to the prosecution of the offense of conviction. U.S.S.G. § 3C1.1. The enhancement applies where a defendant commits perjury while under oath, but does not cover "false statements, not under oath, to law enforcement officers," except where a defendant "provide[s] a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." _Id._ at § 3C1.1 cmt. nn. 4(b), (g), 5(b). We have applied this commentary as written. _See, e.g._, _United States v. Solano-Godines_, 120 F.3d 957, 965 (9th Cir. 1997). Every other circuit has done the same. _See, e.g._, _United States v. Selvie_, 684 F.3d 679, 684 (7th Cir. 2012); _United States v. Williams_, 79 F.3d 334, 338 (2nd Cir. 1996).

The district court never specified which of the two versions of obstruction occurred here, and did not make the findings required before imposition of this enhancement. _See United States v. Jimenez-Ortega_, 472 F.3d 1102, 1103 (9th Cir.

1

2007) (citing *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). Instead, on the final day of trial, the court stated, "I either have two persons [Wolverine and Tatsey] who have lied under oath in this court, or, by telling a different and conflicting version to an FBI agent, have lied to an FBI agent in the course of his official capacities and duties. Either of which could be a crime." The court reiterated, "the facts simply cannot be reconciled without drawing the conclusion that one version or the other . . . is not factually true," but specifically declined to resolve "the truth or falsity of the two versions given by" Wolverine.

Later, at sentencing, the district court simply stated, "I have concluded from the entirety of the record that there is certainly ample evidence and justification for the Court, for the purposes of sentencing, to add the 2 points for obstruction of justice." At neither time did the district court make a finding as to which of Wolverine's statements was a lie.

Even if either possible lie "could be a crime,"[1] a lie – even a material lie – is not sufficient under the Guidelines when the lie is to a law enforcement officer.[2]

_____

[1] I do not further consider that possibility, as the point is irrelevant. Wolverine had not been convicted of such a crime. *See* J. in a Criminal Case, Docket No. 79, 1.

[2] The situation here is in contrast to that in *United States v. Swick*, 334 F.3d 784 (8th Cir. 2003), upon which the government relies to argue that the sentencing enhancement is appropriate if Wolverine must have lied on one of the two

2

Lying "to an FBI agent in the course of his official capacities and duties" is only the basis for an obstruction of justice enhancement if the false statement was both "material" *and* "significantly obstructed or impeded the official investigation or prosecution of the instant offense." The advisory notes make clear that, absent such findings, "making false statements, not under oath, to law enforcement officers" does not ordinarily qualify for the enhancement. U.S.S.G. § 3C1.1 cmt. nn. 4(G), 5(B).

The district court never recognized the "significant obstruction or impediment" requirement and made no finding pertinent to it. Although I would remand for further findings, on the current record, such a finding would be problematical.

Wolverine's statement to the FBI *inculpated* her as to the second stabbing. The prosecution went forward rather than halting. The government acknowledged at oral argument that the investigators believed the version of events described by Tatsey in his FBI interview the day before, not what Wolverine told them, and it was that theory the government put forward at trial. *Cf. United States v. Shriver*,

---

occasions. In *Swick*, the defendant gave contradictory material testimony on two occasions, both while under oath, and thus at least one of them had to be perjury. Here, Wolverine's earlier statement was made to the FBI agent while not under oath, and thus had to meet additional requirements, discussed below, to support imposition of the enhancement.

3

967 F.2d 572, 575 (11th Cir. 1992) (collecting cases).  So there is scant evidence

on the record that the statement, if a lie, actually "obstructed or impeded the

official investigation," much less did so "significantly."  Nor is there any finding

that Wolverine's *inculpatory* statement to the FBI was an attempt to obstruct or

impede justice by *significantly* obstructing or impeding the investigation; the

district court assumed that the material lie was sufficient, as it is for perjury.

We held in *Jimenez-Ortega* that "the materiality of a false statement is one

of the factual predicates of an obstruction enhancement," and not "a purely legal

question . . . that the court of appeals c[an] decide in the first instance."  472 F.3d

at 1103.  *Jimenez-Ortega* directed that when a district court fails to make the

necessary factual findings to support imposition of this enhancement, and the

government has not argued that the error was harmless, "we must remand" to the

district court rather than substitute our judgment in its place.  *Id.* at 1103-04 & n.2.

The same reasoning applies to the failure to determine whether the "significantly

obstructed or impeded" requirement is met.[3]  We thus must remand for a proper

determination, applying the correct Guidelines standards, as to the obstruction of

---

[3] The majority suggests that Application note 4(G) is "inconsistent with the guideline itself."  Maj. at 8.  No party has so argued, and every court, including this court, that has applied the commentary has applied it as written.  *See also Stinson v. United States*, 508 U.S. 36, 44 (1993);  *Ehlert v. United States*, 402 U.S. 99, 105 (1971).

4

justice enhancement.

I respectfully dissent.